IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

Uhuru Baraka Rowe,

      Plaintiff,

vs.

Civil Action No. 3:19cv418

Gregory L. Holloway, Beth E. Cabell,
Tony Darden, B. Perkins, Wanda Rollins,
K. Clark, M. Carpenter, C. Coleman,
L. Shaw, L. Taylor, M. Bradley.

      Defendants.

## COMPLAINT UNDER CIVIL RIGHTS ACT, 42 U.S.C. §1983

### INTRODUCTION

1. This is a civil rights action filed by Uhuru Baraka Rowe, a state prisoner proceeding pro se, for damages and injunctive relief pursuant to Title 42, U.S.C. §1983 as a result of government retaliation against him for his protected free speech, in violation of the First and Fourteenth Amendments to the United States Constitution.

### JURISDICTION

2. This action arises under the First and Fourteenth Amendments to the United States Constitution and Title 42, U.S.C. §1983.

3. The jurisdiction of this Court is predicated on Title 28, U.S.C. §1331 and Title 28, U.S.C. §1343(a)(3) and (a)(4).

### VENUE

4. Venue properly lies in this District pursuant to Title 28, U.S.C. §1391(b)(2) because the cause of action arose in this District and division.

RECEIVED
MAY 3 1 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

5. Plaintiff Uhuru Baraka Rowe is a prisoner of the Commonwealth of Virginia and, at all times relevant to this complaint, was housed at Sussex II State Prison in Waverly, Virginia.

6. Defendant Gregory L. Holloway, at all times relevant to this complaint, was the acting Eastern Regional Administrator for the Virginia Department of Corrections(VADOC) at 14545 Old Belfield Road, in Capron, Virginia 23829. He was responsible for overseeing the daily operations of prisons in the Eastern Region of the VDOC, including reviewing and issuing Level II responses to appeals of Regular Grievances. At all times relevant to this complaint, he was acting under color of state law and is sued in his individual and official capacities.

7. Defendant Beth E. Cabell, at all times relevant to this complaint, was the Warden of Sussex II State Prison at 24427 Musselwhite Drive, in Waverly, Virginia 23891. She was responsible for overseeing the daily operations of Sussex II State Prison, including reviewing and issuing Level 1 responses to Regular Grievances. At all times relevant to this complaint, she was acting under color of state law and is sued in her individual and official capacities.

8. Defendant Tony Darden, at all times relevant to this complaint, was the Assistant Warden of Sussex II State Prison at 24427 Musselwhite Drive, in Waverly, Virginia 23891. He was responsible for overseeing the daily operations of Sussex II State Prison, including reviewing and issuing Level 1 responses to Regular Grievances on those occasions when the Warden is unable or unvailable to perform those functions. At all times relevant to this complaint, he was acting under color of state law and is sued in his individual and official capacities.

9. Defendant B. Perkins, at all times relevant to this complaint, was the Unit Manager of Housing Unit #3 at Sussex II State Prison at 24427 Musselwhite Drive, in Waverly, Virginia 23891. He was responsible for overseeing the daily operations of Housing Unit #3, including assuring that all offenders confined to administrative and disciplinary segregation in the Unit physically appear at a formal due process hearing before the Institutional Classification Authority (ICA) on their scheduled date. At all times relevant to this complaint, he was acting under color of state law and is sued in his individual and official capacities.

10. Defendant K. Clark, at all times relevant to this complaint, was the Major and Chief of Security at Sussex II State Prison at 24427 Musselwhite Drive, in Waverly, Virginia 23891. He was responsible for overseeing the security at Sussex II State Prison, including approving and disapproving offenders for work assignments in the Department of Corrections Education (DCE) area of the prison. At all times relevant to this complaint, he was acting under color of state law and is sued in his individual and official capacities.

11. Defendant M. Carpenter, at all times relevant to this complaint, was the lead investigator at Sussex II State Prison at 24427 Musselwhite Drive, in Waverly, Virginia 23891. She was responsible for gathering intelligence on offenders suspected of engaging in illegal/criminal activities, including assigning offenders to administrative/disciplinary segregation pending an investigation by her. At all times relevant to this complaint, she was acting under color of state law and is sued in her individual and official capacities.

12. Defendant C. Coleman, at all times relevant to this complaint, was the Sergeant in Housing Unit #1 at Sussex II State Prison at 24427 Musselwhite Drive, in Waverly, Virginia 23891. In addition to

3

other auxiliary supervisory powers within the Unit, he was respon-
sible for inventorying and storing the personal property of offen-
ders who have been removed from the Unit and assigned to administra-
tive and disciplinary segregation. At all times relevant to this com-
plaint, he was acting under color of state law and is sued in his
individual and official capacities.

13. Defendant L. Shaw, at all times relevant to this complaint,
was the Work Program Assignment Reviewer (PAR) and Senior Counselor
at Sussex II State Prison at 24427 Musselwhite Drive, in Waverly,
Virginia 23891. She was responsible for the management and operation
of Sussex II State Prison's offender work program, including hiring
and removing offenders from job assignments. At all times relevant to
this complaint, she was acting under color of state law and is sued
in her individual and official capacities.

14. Defendant L. Taylor, at all times relevant to this complaint,
was the Institutional Program Manager at Sussex II State Prison at
24427 Musselwhite Drive, in Waverly, Virginia 23891. She was respon-
ble for overseeing the offender work program, including reviewing
and finalizing any decision made by Program Assignment Reviewer re-
garding the hiring and removal of offenders from work assignments.
At all times relevant to this complaint, she was acting under color
of state law and is sued in her individual and official capacities.

15. Defendant M. Bradley, at all times relevant to this com-
plaint, was a work supervisor/DCE teacher at Sussex II State Prison
at 24427 Musselwhite Drive, Waverly, Virginia 23981. She was respon-
sible for teaching Adult Basic Education to eligible offenders and
recommending the hiring and removal of offenders as DCE aids/tutors.
At all times relevant to this complaint, she was acting under color

4

of state law and is sued in her individual and official capacities.

## PREVIOUS LAWSUIT

16. Plaintiff currently has a Title 42, U.S.C. §1983 civil rights complaint pending before this court. It was filed on November 19, 2018 by Attorney Jeffrey E. Fogel and was docketed as Rowe v. Clarke, Civil Action No. 3:18-cv-780-REP.

## GRIEVANCE PROCEDURE

17. The matters giving rise to this civil rights complaint occurred at Sussex II State Prison. Plaintiff has exhaused all administrative grievance remedies as they relate to his claims. The grievances were deemed "unfounded" by Defendants Cabell and Darden on June 22, 2018, July 27, 2018, and August 9, 2018, respectively, and Defendant Holloway upheld those decisions on appeal on July 5, 2018, August 15, 2018, and August 24, 2018, respectively.

## STATEMENT OF THE CLAIM

18. Plaintiff Uhuru Baraka Rowe is a politically conscious prisoner who, among other things, writes essays and position papers that are often critical of prison conditions and prison officials. Plaintiff routinely mails these essays and position papers to outside acquaintances via postal mail and JPay electronic messages. These outside acquaintances then post Plaintiff's writings on his blog at https://consciousprisoner.wordpress.com and other social media outlets in order to raise public awareness about many of the human rights abuses incarcerated people are forced to endure.

19. On or about May 8, 2018, Plaintiff attempted to mail a position paper he authored to an outside acquaintance so that it could be copied and disseminated to state legislators and posted on Plaintiff's blog. The position paper, dated May 8, 2018, presented a

point by point analysis of the various conditions that prisoners at Sussex II State Prison were subjected to, e.g., dirty and potentially contaminated drinking water, spoiled and rotten food, substandard medical and dental care, arbitrary group punishment, biased grievance procedure, and an exceptionally harsh environment which contributed to the deaths of over 13 prisoners between 2016 and 2018. The position paper also contained a request that Plaintiff's outside acquaintance and other concerned citizens organize a peaceful rally in order to raise public awareness about the above conditions.

20. On the morning of May 10, 2018, Plaintiff's cell was searched by two subordinate prison investigators acting on an order from Defendant Carpenter. During the cell search, the two investigators meticulously searched through all of Plaintiff's paperwork, including his personal mail and legal documents. Approximately 30 minutes later, two correctional officers came to Plaintiff's cell, handcuffed him, and escorted him to the segregation unit.

21. Once in segregation, Plaintiff was placed on Administrative segregation status pending an investigation by Defendant Carpenter. Plaintiff was also issued a Institutional Classification Authority Hearing Notification Form advising him that he was scheduled to appear at a formal due process hearing before the Institutional Classification Authority (ICA) on May 15, 2018. (See ICA Hearing Notification Form at Exhibit A).The purpose of the ICA hearing was to make Plaintiff aware of the reason(s) why he was placed on Administrative segregation, what he was being investigated for, and to speak in his own behalf. Even though Plaintiff checked the box

on the ICA form indicating his desire to appear at the hearing, Defendant Perkins denied Plaintiff the right to do so by conducting the hearing without him being present. A grievance filed on this issue was deemed unfounded by Defendant Cabell on June 22, 2018. That decision was upheld on appeal by Defendant Holloway on July 5, 2018.

22. On May 15, 2018, Plaintiff was escorted from his cell to an an interview room and interrogated by Defendant Carpenter about the matters contained within his position paper. Specifically, Defendant Carpenter wanted to know why Plaintiff authored the position paper, why he was attempting to mail it to an outside acquaintance, and why he he did not opt to redress the issues in the position paper via the institutional grievance system as an alternative to authoring the position paper. Defendant Carpenter also questioned Plaintiff concerning the essays on his blog which are critical of the prison conditions and prison officaial at Sussex II State Prison.

23. Plaintiff agreed to write a statement for Defendant Carpenter in which he essentially stated that he alone authored the position paper because the conditions at Sussex II State Prison were inhumane and that he was attempting to mail the position paper to an outside acquaintance so that those conditions could be exposed to the public for public scrutiny. At the end of interview, Defendant Carpenter told Plaintiff that the investigation and his status on Administrative Segregation would be ongoing.

24. On May 24, 2018, Plaintiff was released from Administrative Segregation back to General Population. Upon receipt of his property

7

the same day, which had been inventoried and stored by Defendant Coleman, Plaintiff noticed that several of his political/history books and magazines were missing, including The Insurrectionist; Queer (In)Justice; Cointelpro: The FBI's Secret War on Political Freedom; Fundamental Political Line of the Maoist Internationalist Ministry of Prisons; Maoist Internationalist Ministry (MIM) Theory 2/3; MIM Theory 4; MIM Theory 5; MIM Theory 6; MIM Theory 8; and MIM Theory 10. Even though the Personal Property Inventory Form, which was completed by Defendant Coleman, indicated that 13 total books were inventoried and stored in Plaintiff's property or issued to Plaintiff while he was in Administrative Segregation, the above-listed books were not present in his property on the day he was released from segregation. A grievance filed on this issue was deemed unfounded by Defendant Cabell on July 27, 2018. That decision was upheld on appeal by Defendant Holloway on August 15, 2018.

25. On May 25, 2018, Plaintiff reported to his work assignment as a DCE tutor/aide for Defendant Bradley who told him that he was no longer employed. When Plaintiff asked Defendant Bradley why he was no longer employed, she told him that the decision to terminate his job "came down from up top."

26. On May 30, 2018, Defendant Bradley initiated a Work Program Termination Request listing the reason for requesting the termination as "Due to Administrative reasons, at this time, you will not be permitted to work in the DCE area." (See Work Program Termination Request at Exhibit B).

27. On May 30, 2018 (the same day Defendant Bradley initiated the termination request), Defendants Shaw and Taylor approved Defen-

dant Bradley's termination request and Plaintiff was officially ter-
minated from his job as a DEC tutor/aid without being allowed to
appear before a mandatory PAR hearing so that he could be made aware
of the specific reason(s) for his termination and to contest those
reasons.

28. Thereafter, Plaintiff sent an Offender Request to Defendant
Shaw asking for a copy of the Incident Report that would reflect the
specific reason(s) why he was terminated from his job. (See Offender
Request at Exhibit C). Defendant Shaw forwarded the request to De-
fender Clark who responded saying, "No incident reports will be for-
warded to offenders. I as the Chief of Security is who approves and
disapproves any support build [sic] work. I did not chose you at that
time." With this response, Defendant Clark is implying that he did
not approve of Plaintiff to work as a DEC tutor/aide even though his
approval is reflected by his signature of approval on the Work Assign-
ment Form. (See Work Assignment Form at Exhibit D). A grievance filed on
this issue was deemed unfounded by Defendant Cabell on July 27, 2018. That decision
was upheld on appeal by Defendant Holloway on August 15, 2018.

29. Between June 6, 2018 and June 21, 2018, ten of Plaintiff's
outgoing emails that he attempted to send to two of his outside ac-
quaintances via JPay electronic messaging services were censored by
Defendant Carpenter. These outgoing emails contained parts of two poli-
tical essays titled, "Life at Sussex 2 State Prison-Revisted" and
"Sussex 2 State Prison is a Potemkin Prison." Also censored was an in-
terview Plaintiff conducted with a fellow prisoner titled "Live From
Behind Enemy Lines: An Interview with Terrell Terry." Both essays and
parts of the interview contain language critical of conditions and
officials at Sussex II State Prison. The censorship of the two essays

is the subject of another civil rights action pending with this
court in the case of Rowe v. Clark et al, Civil Action No. 3:18-cv-
780. A grievance filed on this issue was deemed unfounded by Defen-
dant Darden on August 9, 2018. That decision was upheld on appeal
by Defendant Holloway on August 24, 2018.

### CAUSE OF ACTION

30. It is well established that in order to prevail on a First
Amendment retaliation claim under Title 42, U.S.C. §1983, Plaintiff
must prove that he engaged in constitutionally protected free speech,
that defendants took adverse action against him because of the pro-
tected speech, and that there is a causal connection between the pro-
tected speech and the adverse action of defendants.

31. Plaintiff's criticisms of prison conditions and prison offi-
cials at Sussex II State Prison contained within his position paper
was/is protected free speech. See Procunier v. Martinez, 416 U.S.
396, 40 L.Ed.2d 224 (1974).

32. Because of Plaintiff's protected free speech criticizing
prison conditions and prison officials at Sussex II State Prison,
Defendants Carpenter, Coleman, Perkins, Bradley, Shaw, Turner, and
Clark took adverse retaliatory action against him as it is
detailed in paragraphs 20-29.

33. Defendants Darden, Cabell, and Hollway are liable because
after being informed of the violation of Plaintiff's rights and the
adverse actions taken against him, failed to remedy the unconstitu-
tional conduct of Defendants Carpenter, Coleman, Perkins, Bradley,
Shaw, Turner and Clark.

34. The causal connection between Plaintiff's protected free

speech and defendants' adverse retaliatory actions is established by temporal proximity and the chronology of the events. Furthermore, no non-retaliatory justification for the adverse actions taken in paragraphs 20-29 has ever been given by the defendants and, therefore, given the temporal proximity between defendants' adverse actions and Plaintiff's exercise of his 1st Amendment right, the burden should be on the defendants to prove a non-retaliatory motive.

35. Almost immediately after Plaintiff's outgoing position paper was intercepted by Defendant Carpenter, all of the adverse retaliatory actions outlined in paragraphs 20-29 occurred within a span of just 28 days. The chronology of these events and the temporal proximity in which they occurred establishes a causal connection between Plaintiff's protected free speech and defendants' adverse retaliatory action and that defendants' actions were wholly motivated by their desire to punish Plaintiff for his criticisms of the conditions and officials at Sussex II State Prison.

36. To further bolster his claim that the adverse actions taken against him by defendants were retaliatory in nature, Plaintiff states that after he was placed on administrative segregation on May 10, 2018, his attorney in another matter, Beth A. Norton, called Sussex II State Prison to inquire about the welfare of Plaintiff. After leaving several messages, Attorney Norton received a phone call from an administrator at the prison who falsely claimed that the entire prison was on lockdown and that Plaintiff had not been placed on segregation status.

37. The effort by Sussex II State Prison officials to conceal Plaintiff's placement on segregation status bolsters his claim that the adverse actions taken against Plaintiff was an organized con-

spiracy by officials at Sussex II State Prison, including the de-
fendants, to punish Plaintiff for speaking out, through his writings,
against the horrendous conditions that prisoners at Sussex II State
Prison were made to endure. Had it not been for Attorney Norton re-
peatedly calling the prison to inquire about Plaintiff's welfare,
Plaintiff would have been held on segregation status much longer than
the 14 days he spent isolated in a single-man cell, for 22-23 hours
a day, for no other reason than exercising his right to free speech.

38. To be sure, Plaintiff states that, but for his criticisms
of the conditions and officials at Sussex II State Prison, none of
the adverse actions taken against him would have occurred, and be-
cause they did occur, Plaintiff suffered physical and mental harm.

**WHEREFORE**, Plaintiff requests the following relief:

a. Compensatory damages in the amount of $5,000.00.

b. Punitive damages in the amount of $20,000.00.

c. Declaratory judgement in Plaintiff's favor.

d. Preliminary and permanent injunction prohibiting all correctional
facilities under the control and supervision of Defendant Holloway
from taking any adverse action against Plaintiff as a result of his
writings which criticize prison conditions and prison officials.

e. Any other relief deemed appropriate and just by the court, in-
cluding the refund of any and all expenses incurred in pursuit of
this action.

## PLACES OF INCARCERATION

Within the last 6 months, Plaintiff was incarcerated at Sussex
II State Prison, 24427 Musselwhite Drive, Waverly, VA 23891. He

currently is housed at Greensville Correctional Center, 901 Corrections Way, Jarratt, VA 23870.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable in the United States District Court for the Eastern District of Virginia, Richmond Division.

## DECLARATION

Pursuant to 28 U.S.C. §1746, I, Uhuru Baraka Rowe, declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this ___29th___ day of May, 2019.


_Uhuru Rowe_
Uhuru Baraka Rowe, Plaintiff