RECEIVED
MAY 14 2020
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

Uhuru Baraka Rowe,
Plaintiff,

vs.

Tracy S. Ray, T. L. Birckhead, B. Perkins, K. Clark, Michelle Carpenter, Natasha Perkerson, C. Coleman, L. Shaw, L. Taylor, M. Bradley,
Defendants.

AMENDED COMPLAINT

Civil Action No. 3:19-cv-418

## I. INTRODUCTION

1. This is a civil rights action filed by Uhuru Baraka Rowe, a state prisoner proceeding pro se, for damages pursuant to Title 42 U.S.C. § 1983 as a result of retaliation taken against him by Sussex II State Prison officials in response to his protected free speech, in violation of the First, Eighth and Fourteenth Amendments to the U.S. Constitution.

## II. JURISDICTION AND VENUE

2. The court has jurisdiction under Title 28 U.S.C. §§ 1331 and 1343 (a)(3) and (a)(4).

3. The United States District Court for the Eastern District of Virginia, Richmond Division, is the appropriate venue for this action under Title 28 U.S.C. § 1391 (b)(2) because the events giving rise to this action occurred in this district and division.

## III. PLAINTIFF

4. Plaintiff Uhuru Baraka Rowe is and was at all times mentioned herein a prisoner of the Commonwealth of Virginia in the custody of the Virginia Department of Corrections. He is currently confined in Greensville Correctional Center in Jarratt, Virginia.

## IV. DEFENDANTS

5. Tracy S. Ray, at all times relevant to this complaint, was the Warden of Sussex II State Prison (SIISP). He was responsible for the operation of the prison and for the general welfare of all inmates in the prison.

6. T. L. Birckhead, at all times relevant to this complaint, was the Operations Manager of SIISP. She was responsible for managing the daily operations of certain departments within the prison, including the Mailroom Department.

7. B. Perkins, at all times relevant to this complaint, was the Unit Manager of Housing Unit 3 at SIISP. He was responsible for the daily operations of the unit and for the general welfare of all inmates in the unit.

8. K. Clark, at all times relevant to this complaint, held the rank of Major and was the Chief of Security of SIISP. He was responsible for overseeing the overall security of the prison.

9. Michelle Carpenter, at all times relevant to this complaint, held the rank of Lieutenant and was the Chief Intelligence Officer of SIISP. She was responsible for overseeing the investigation of inmates at the prison.

10. Natasha Perkerson, at all times relevant to this complaint, was an Intelligence Officer of SIISP. She was responsible for conducting investigations of inmates at the prison under the supervision of Defendant Carpenter.

11. C. Coleman, at all times relevant to this complaint, held the rank of Sergeant and was assigned to Housing Unit 1 at SIISP. He exercised auxiliary supervisory powers within the unit.

12. L. Shaw, at all times relevant to this complaint, was the Senior Counselor and work Program Assignment Reviewer (PAR) of SIISP. She was responsible for the management and operation of the prison's offender work program.

13. L. Taylor, at all times relevant to this complaint, was the Institution Program Manager (IPM) of SIISP. She was responsible for overseeing all work programs at the prison.

14. M. Bradley, at all times relevant to this complaint, was the Division of Education (DOE) Instructor for the Adult Basic Education (ABE) class at SIISP. She was responsible for instructing offenders assigned to the class as well as supervising offender tutors and aides.

15. At all times mentioned in this complaint, each defendant acted under the color of state law and are sued in their individual and official capacities.

## V. FACTS

16. Plaintiff, Uhuru Baraka Rowe, is a socially conscious and politically active prisoner who, among things, writes essays and position papers that are often critical prison conditions and prison officials.

17. Plaintiff routinely mails his writings to outside acquaintances via U.S. postal mail and JPay secure electronic messaging (JPay emails).

18. Plaintiff's acquaintances then post them on his blog at https://consciousprisoner.wordpress.com in an effort to raise public awareness about what Plaintiff believes to be inhumane prison conditions.

19. According to a transcript of the deposition of Defendant Carpenter in the case of Rowe v. Clarke, No. 3:18-cv-780 (E.D.Va. 2018), sometime in February or March of 2018, Defendants Carpenter and Perkerson learned of Plaintiff's blog from Ms. Ryan, a Commercial Arts teacher at SIISP. (See Carpenter's Deposition Transcript, p. 6, lines 12-18 at Exhibit A).

20. Defendant Carpenter began investigating Plaintiff solely because of the existence of his blog. (Carpenter's Transcript, p. 20, lines 14-20).

21. Defendant Carpenter advised Defendant Perkerson to contact Defendant Birckhead about how to obtain a mail cover that will allow them to monitor, open and read Plaintiff's incoming and outgoing mail. (Carpenter's Transcript, p. 53, lines 1-4).

22. Defendant Birckhead instructed Defendants Carpenter and Perkerson on how to request the mail cover from Defendant Ray. (Carpenter's Transcript, p. 53, lines 4-6).

23. Defendants Carpenter and Perkerson requested and was granted

a mail cover by Defendant Ray without inquiring why the mail cover was needed and without having been provided with any evidence that Plaintiff had used his correspondence to engage in illegal or criminal activities.

24. On information and belief, on or about May 8, 2018, Defendants Carpenter and Perkerson, at the direction of Defendant Birckhead, intercepted one of Plaintiff's outgoing letters containing a position paper he authored entiled, "A Call to Action." (See Position Paper at Exhibit B).

25. The position paper, dated May 8, 2018, contained a detailed discription of what Plaintiff believed were unconstitutional and inhumane conditions at SIISP; e.g. dirty and potentially contaminated drinking water, substandard food, arbitrary group punishment, critical understaffing levels, and the preventable deaths of over 12 prisoners due to deliberate indifference, neglect and drug overdoses.

26. The position paper also contained a recommendation that a peaceful rally be held at the headquarters of the Department of Corrections (VDOC) in Richmond, Virginia in order to raise public awareness about the issues detailed in the position and to pressure VDOC offials to remedy those issues.

27. On the morning of May 10, 2018, Plaintiff's cell was searched by two subordinate intelligence officers who were, upon information and belief, acting under the direction of Defendant Carpenter.

28. Approximately 30 minutes after the search of Plaintiff's cell

was completed, two correctional officers came to Plaintiff's cell, handcuffed him and escorted him to the Restrictive Housing Unit (RHU).

29. Once in the RHU, Plaintiff was issued an Institutional Classification Authority (ICA) Hearing Notification form advising him that he was assigned to General Detention status pending an investigation by the intelligence unit and that he was scheduled to appear at a formal due process hearing before the ICA on or after May 15, 2018. (See ICA Notification Hearing form at Exhibit C).

30. Although Plaintiff checked the box on the ICA form indicating his desire to attend the hearing, he was denied the right to do so when Defendant Perkins conducted the hearing without Plaintiff being present.

31. In the afternoon of May 15, 2018, Plaintiff was handcuffed and escorted from his cell to an interview room where he was interrogated by Defendants Carpenter and Perkerson concerning the issues raised in his position paper, the rally that it recommended and the writings on his blog about the conditions at SIISP.

32. At the end of the interview, Defendant Carpenter informed Plaintiff he would remain in the RHU until the completion her invesitgation.

33. On May 24, 2018, Plaintiff was released from the RHU back to General Population and was assigned his personal property that had been inventoried and stored by Defendant Coleman.

34. Upon examining his personal property, Plaintiff noticed that several of his political books and magazines were missing and had been either stolen or confiscated by Defendant Coleman, including The Insurrectionist, Cointelpro: The FBI's Secret War on Political Freedom, Queer (In)Justice, Fundamental Political Line of the Maoist Internationalist Ministry of Prisons, Maoist Internationalist Ministry (MIM) Theory 2/3, MIM Theory 4, MIM Theory 5, MIM Theory 6, MIM Theory 8 and MIM Theory 10.

35. On May 28, 2018, four days after being released from the RHU, Plaintiff reported for his work assignment as a Department of Education (DOE) aide for Defendant Bradley who had on, May 8, 2018, recommended Plaintiff for the job. (See Work Assignment Form at Exhibit D).

36. When Plaintiff reported for work on May 28, 2018, Defendant Bradley informed him that he was terminated from his work assignment. When Plaintiff asked why he was terminated, Defendant Bradley advised him that "The decision came down from up top."

37. On May 30, 2018, Defendant Bradley initiated a Work Program Termination Request and listed the reason for requesting the termination as "Due to Adminstrative reasons, at this time, you will not be permitted to work in the DCE area." (See Work Program Termination Request at Exhibit E).

38. On May 30, 2018, Defendants Shaw and Taylor approved Defendant Bradley's termination request without conducting an

Informal PAR Hearing where Plaintiff would have had the opportunity to appear before Defendant Shaw to determine if Plaintiff should return to work or be removed from the job, as required by the Implementation Memorandum for VDOC Operating Procedure 841.2.

39. Plaintiff submitted an Offender Request, dated May 29, 2018, to Defendant Shaw inquiring about the status of his job. (See Offender Request at Exhibit F).

40. In her June 4, 2018 response to the request, Defendant Shaw advised Plaintiff that "... according to information, that [she] received from Administration [she] was instructed that [Plaintiff] were not to work in the DCE [Department of Corrections Education] area." Defendant did not specifically state what the "information" was that she received or the name of the person in "administration" who instructed her to terminate Plaintiff from his job.

41. Plaintiff submitted another Offender Request to Defendant Shaw, dated June 28, 2018, requesting a copy of the Incident Report that would reflect the specific reason(s) why he was terminated from his job. (See Offender Request at Exhibit G).

42. In her June 6, 2018 response, Defendant Shaw advised Plaintiff the request would be forwarded to Defendant Clark for a response.

43. In his response reflected at the bottom of the request at Exhibit G, Defendant Clark advised Plaintiff that "No incident reports will be forwarded to offenders. I as the Chief of Security is who approves and disapproves any support

build (sic) work. I did not chose you at that time."

44. However Defendant Clark did in fact chose (i.e. approve) Plaintiff to work in the support building area of the DCE as Defendant Bradley's aide as reflected by his signature of approval in Section IV of the Work Assignment Form at Exhibit D.

45. Because Defendant Shaw forward the request at Exhibit G to Defendant Clark for his response and because Defendant Clark falsely claimed that he not approve Plaintiff to work as Defendant Bradley's aide, it is plausible that Defendant Clark directed Defendants Bradley, Shaw and Taylor to terminate Plaintiff from his job.

46. According to a transcript of a deposition given by Defendant Carpenter on May 31, 2019 in the matter of Rowe v. Clark, Civil Action No. 3:18-cv-780 (See Carpenter's Transcript at Exhibit A) the following facts were revealed:

47. In May 2018, Defendants Carpenter and Perkerson learned that Plaintiff had an online blog on which he posted his political writings, most of which are critical of prison officials and conditions in prison.

48. Sometime thereafter, Defendant Perkerson contacted Defendant Birckhead to inform her of the existence of Plaintiff's blog and inquired about what steps to take.

49. Defendant Birckhead then instructed Defendant Perkerson to get a mail cover from Defendant Ray.

50. Defendant Carpenter submitted a request to Defendant Ray for a mail cover.

51. Defendant Ray granted Defendant Carpenter's request for a mail cover to open and read all of Plaintiff's incoming and outgoing mail without any evidence or suspicion that his correspondence, specifically his outgoing correspondence, violated state or federal laws or threatened the security of the prison in violation of VDOC Operating Procedure 803.1.

52. Thereafter, Defendants Carpenter and Perkerson began intercepting and censoring Plaintiff's incoming and outgoing U.S. Postal mail and JPay Electronic Secure Messages (JPay e-mails).

53. On June 1, 2018, Plaintiff attempted to send, via JPay e-mail, the following two political essays to outside acquaintances so they could be posted on his blog and disseminated to various media outlets and human rights organizations: "Life at Sussex 2 State Prison-Revisited" and "Sussex 2 State Prison is a Potemkin Prison." (See Life at Sussex 2 State Prison at Exhibit H and Sussex 2 State Prison is a Potemkin Prison at Exhibit I).

54. Defendants Carpenter and Perkerson, under the direction of Defendant Birckhead, intercepted and censored the above two essays.

55. On June 6, 2018, June 20, 2018 and June 21, 2018, Plaintiff received a total of ten (10) notifications from a JPay representatives advising him that the JPay e-mails containing the above two essays had been censored due to a "violation of COPD, Law, or DOC Policy."

56. Plaintiff was never notified by Defendants Carpenter, Perker-

son or Birckhead that the JPay e-mails containing the above two essays had been censored as required by VDOC Operating Procedure 803.1.

## VI. LEGAL CLAIMS

57. Plaintiff reallege and incorporate by reference paragraphs 16-56.

58. On or about May 8, 2018, Defendants Carpenter, Perkerson and Birckhead violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution when they, without giving proper notice to Plaintiff, deliberately, maliciously and wantonly intercepted and censored his outgoing U.S. postal mail containing his position paper at Exhibit B.

59. On or about May 10, 2018, on information and belief, Defendants Carpenter and Perkerson, under the direction of Defendant Birckhead, violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the U.S. Constitution when they deliberately, maliciously and wantonly subjected Plaintiff to 14 days in an isolation cell in the RHU, for 22-24 hours a day where he suffered physical and psychological torture, as part of a larger conspiracy to retaliate against him for his protected speech in his position paper and other writings on his blog that are critical of prison officials.

60. On or about May 10, 2018, on information and belief, Defendant Coleman violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution when he, without cause and without giving proper notice to Plaintiff, deliberately, maliciously and wantonly confiscated or de-

stroyed his political literature as described in paragraph 34 as part of a larger conspiracy to retaliate against him for his protected speech in his position paper and other writings on his blog that are critical of prison officials.

61. On or about May 15, 2018, Defendant Perkins violated Plaintiff's First, Eighth and Fourteenth Amendments to the U.S. Constitution when he, without cause and without giving proper notice to Plaintiff, deliberately, maliciously and wantonly denied Plaintiff, while he was in the RHU, the right to appear at a formal due process hearing before the ICA as part of a larger conspiracy to retaliate against him for his protected speech in his position paper and other writings on his blog that are critical of prison officals.

62. On or about May 30, 2018, Defendants Bradley, Shaw and Taylor, under the direction of Defendant Clark, violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution when they, without cause and without giving proper notice or a hearing to Plaintiff, deliberately, maliciously and wantonly terminated him from his job assignment as part of a larger conspiracy to retaliate against him for his protected speech in his position paper and other writings on his blog that are critical of prison officials.

63. From June 6, 2018 through June 21, 2018, Defendants Carpenter and Perkerson, under the direction of Defendant Birckhead, violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution when they, without cause and without giving proper notice to Plaintiff, deliberately,

maliciously and wantonly intercepted and censored his JPay e-mails containing the essays at Exhibits I and J as part of a larger conspiracy to retaliate against him for his protected speech in his position paper and other writings on his blog that are critical of prison officials.

64. In May of 2018, Defendant Ray violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution when he, without cause and without knowledge, suspicion or evidence that Plaintiff had used his mail to engage in criminal activity or threaten to security of the prison, deliberately, maliciously and wantonly granted Defendant Carpenter's request for a mail cover as part of a larger conspiracy to retaliate against him for his protected speech.

65. On or about May 30, 2018, Defendant Clark, on information and belief, violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution when he, without cause and without giving proper notice to Plaintiff, deliberately, maliciously and wantonly directed Defendants Bradley, Shaw and Taylor to terminate Plaintiff from his job assignment as part of a larger conspiracy to retaliate against him for his protected speech in his position paper and other writings on his blog that are critical of prison officials.

66. It is well established that a public official, including a prison official, may not misuse his or her power to retaliate against an individual for the exercise of a valid constitutional right. Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001).

67. It is also well established that in order to prevail on a First Amendment retaliation claim, Plaintiff must prove three elements: (i) that his speech was protected; (ii) that defendants' alleged retaliatory actions adversely affected his constitutionally protected speech; and (iii) that a causal relationship existed between his speech and defendants' retaliatory action. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 536 (4th Cir. 2017), citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000).

68. It is also well established that "Prison officials may not censor an inmate's correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." Procunier v. Martinez, 416 U.S. 396, 413 (1974).

69. Plaintiff's criticisms of the living conditions and officials at SIISP contained within his position paper at Exhibit B and his two essays at Exhibits I and J is protected free speech under the First Amendment to the U.S. Constitution.

70. Upon information and belief, Plaintiff contends that because of his protected speech, Defendants individually and collectively retaliated against him as detailed in paragraphs 16-56.

71. The causal connection between Plaintiff's protected speech and Defendants' adverse retaliatory actions is established by temporal proximity and chronology of those adverse actions.

72. Almost immediately after Defendants Carpenter, Perkerson and Birckhead intercepted and became aware of Plaintiff's position paper and other writings on this blog, all of the adverse actions occurred within a span of just 28 days.

73. The chronology of Defendants' adverse actions and their temporal proximity to the interception and knowledge of Plaintiff's position paper and other writings on his blog establishes a causal connection between the two and raises an inference of a retaliatory motive.

74. Plaintiff's claim of retaliation and the conspiratorial nature of it is further bolstered by the following acts:

- Defendant Clark's false statement on the Offender Request at Exhibit G that he did not choose, i.e. hire Plaintiff to work as an educational aide when signature of approval is present on the Work Assignment Form at Exhibit D.
- Defendant Shaw's vague response on the Offender Request at Exhibit F that "according to information that [she] received from Administration, [she] was instructed that [Plaintiff] were not to work in the DCE area."
- Plaintiff's Attorney, Beth A. Norton, was led to believe that Plaintiff had not been reassigned to the RHU when she called SIISP to inquire about his well-being. (See Attorney Norton's Declaration at Exhibit J)

75. These acts bolsters Plaintiff's claim that individual adverse actions taken against him by Defendants were a coordinated effort to punish him for the criticisms of the conditions and and officials at SIISP contained within his position paper and other writings on his blog.

76. Had it not been for Attorney Beth A. Norton repeatedly calling to the prison to inquire about Plaintiff's well-being and his supporters at the May 24, 2018 rally at the headquarters of the VADOC demanding his release from the RHU, Plaintiff would have been held in the RHU for much longer than 14 days and the retaliatory actions of Defendants likely would have escalated.

77. Finally, Plaintiff contends that, if it weren't for the criticisms of the conditions and officials at SIISP contained in his position paper and other writings on his blog, none of the adverse retaliatory actions taken against him by Defendants would have occured and because they did occur, Plaintiff suffered mental and physical injuries.

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting Plaintiff:

78. A declaration that the adverse acts and omissions described herein violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the U.S. Constitution and laws of the United States of America.

79. Compensatory damages in the amount of $5,000 against each Defendant, jointly and severally.

80. Punitive damages in the amount of $20,000 against each defendant.

81. A jury trial on all issues triable by jury.

82. Plaintiff's costs in this suit.

83. In additional relief this court deems just, proper and equitable.

Dated: April 15, 2020

Respectfully submitted,

Uhuru Rowe

Uhuru Baraka Rowe, #1131545
Greensville Correctional Center
901 Corrections Way
Jarratt, Virginia 23870

DECLARATION

Pursuant to Title 28 U.S.C. § 1746, I, Uhuru Baraka Rowe, the Plaintiff herein, declares under the penalty of perjury that the matters alleged herein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true.

Executed on this 15 day of April, 2020.

Uhuru Rowe
Uhuru Baraka Rowe