Rowe v. Ray

Civil Action No. 3:19cv418

**EXHIBIT B**

# A Call To Action:

We Need A Peaceful Rally To Protest And Raise Public Awareness About The Mistreatment, Neglect, And Human Rights Abuses Of Incarcerated Citizens In Sussex II State Prison

By Uhuru Baraka Rowe, Founder
Free Virginia Movement
May 4, 2018

The Free Virginia Movement (FVM) is calling for a peaceful rally to be held on May 25, 2018, from 12pm-3:30pm, in front of the Virginia Department of Corrections (VADOC) Head-quarters, located at 6900 Atmore Drive, in Richmond, Virginia. The purpose of this rally is to bring together our family and friends, as well as abolitionists, prisoner advocacy groups, human rights groups, community and student activists, and other concerned citizens to protest and raise public awarness about the mistreatment, neglect, and human rights abuses incarcerated citizens are subjected to on an ongoing basis at Sussex II State Prison in Waverly, Virginia. This protest-rally will co-incide with Goal/Demand #16 of the FVM which says, "WE WANT the Abolition of any VADOC policy, practice, or procedure which violates the human/constitutional rights of incarcerated people and endangers/hinders their spiritual, mental, emotional, and physical health and wellbeing and rehabilitation efforts". The issues that this protest-rally will address includes, but are not limited to, the following: (Other protest rallies will be scheduled in the future to address additional issues).

1. Severe understaffing. Sussex II State Prison (S2SP) is so critically understaffed that, for the last six months, prison authorities have resorted to bussing in guards from other prisons around the state to temporarily fill vacancies. This critical understaffing is the result of guards quitting because of a toxic work environment created by Warden Tracy S. Ray, Assistant Warden T. Darden, and Operations Manager T.L. Birckhead; as well as guards being terminated because of misconduct. Standard 4-4052 of the American Correctional Association, the nations largest corrections association and accreditation agency, suggest that the vacancy rate of a prison not exceed 10 percent. We have estimated that the vacancy rate at S2SP exceeds 30 percent. There are days when only three guards are on duty in a Housing Unit which houses 352 inmates. As a result of this critical understaffing, our out-of-cell recreation has been greatly reduced, resulting in us being locked down inside our cells for as long as 20-22 hours a day. Because understaffing was one of the main contributing factors of the 7-hour riot at the Lee Correctional Institution in Bishopville, South Carolina on May 16, 2018, which left 7 inmates dead and over 20 others injured, our lives and safety are also in jeopardy because of the same understaffing here at S2SP. Because S2SP is critically understaffed, and thus is unable to ensure our safety and provide us with adequate recreation, these are conditions which violates our constitution right under the 8th Amendment to be free from cruel and unusual punishment and must be shut down!

2) Unnecessary deaths. Since November of 2016, over 12

incarcerated citizens have died preventable deaths here at S2SP. None of these deaths were reported to the media. In the interest of transparency and the public trust, WE demand that the VADOC hold a press conference where the names and causes of death of each of these incarcerated citizens will be released to the media and the general public.

3) Unhealthy and nutritiously deficient diet. Prison guards at S2SP are fed fresh fruits and vegetables on a daily basis in the prison's staff feeding area BUT the same is denied to its incarcerated citizens. Such a poor diet, deficient in vitamins and minerals from fresh fruits and vegetables causes severe malnourishment, lethargy, depression, fatigue and other physiological/psychological side effects which constitutes a violation of the 8th Amendment's ban against cruel and unusual punishment. As a general practice, we are served artificially flavored/sweetened juice as a substitute for fresh fruits. On those rare occasions when we are served fruits and vegetables, they are either rotten, spoiled, or steamed-leaving them with little to no nutritional value or health benefits. So WE demand a healthy and nutritious diet, complete with fresh fruits and vegetables, which is indispensable to the growth, development, and proper fuctioning of a healthy human being.

4) Contaminated and discolored drinking water. Incarcerated citizens at S2SP are forced to drink water that is discolored and foul tasting and foul smelling, as a result of it being contaminated with dirt and high levels of rust, lead, iron, manganese, and other unknown contaminants. Forcing us to drink

such water constitutes a violation of the 8th Amendment's ban against cruel and unusual punishment. Each time we have complained about this water we are told it is safe to drink. The fact that prison guards are advised not to drink this water and because of the negative side effects we have experienced after drinking it (e.g. cramps, nausea, headaches, diarrhea) this is evidence that the water at SaSP is contaminated, is not safe to drink, and is putting our lives and health at risk. Because having access to safe and clean drinking water is a fundamental Human Right, WE demand that SaSP distribute us bottled water on those days when the water turns brown. Furthermore, WE demand that the Environmental Protection Agency and the Virginia Department of Environmental Quality conduct extensive tests of the water at SaSP at least four times a year to determine if the water is indeed safe to drink with the results of any findings released to its incarcerated citizens, the media, and the general public.


5) Biased and ineffective grievance procedure. The grievance procedure at SaSP is biased against those incarcerated citizens who utilize it to lodge complaints and grievances to redress staff misconduct and other instances of mistreatment, neglect, and human rights abuses. It is standard practice for the various Office Service Specialists (OSS) and the Grievance Coordinator, A. Critton, to not issue us logging receipts for our Informal Complaints and Grievances; for our grievances to be routinely rejected by A. Critton for bogus reasons; and for various OSS to throw our Informal Complaints in the trash. All of

these practices occur with the full knowledge and consent of Operations Manager T. Birckhead — who oversees the grievance department here at SJSP — for the purpose of maintaining a strict code of silence and secrecy among VADOC employees; covering up staff misconduct and other instances of mistreatment, neglect, and human rights abuses; shielding VADOC employees from accounta- bility; and hindering us from filing civil suits against the VADOC. (Before we can file a federal civil suit against the VADOC, we must first exhaust all available administrative reme- dies to the highest level. Administrative grievance remedies cannot be exhausted if grievances are thrown into the trash or rejected by the grievance coordinator for bogus reasons). Because of the high level of corruption surrounding the Grievance Department here at SJSP, WE demand an independent (non-VADOC employed) Grievance Coordinator be established for this prison. This independent Grievance Coordinator shall receive and investigate any allegations of mistreatment, misconduct, neglect, and human rights abuses perpetrated by prison officials, and shall report any findings of fact and conclusions of any investigations directly to the Governor of Virginia.

6) Group punishment. It is standard practice at SJSP, a practice approved by Warden Tracy S. Ray, to punish all incarcerated citizens as a group because of the misbehavior of one or more people. If there is a disturbance (e.g. a fight) be- tween two people in a pod, the entire pod or housing unit is placed on lockdown and any earned privileges accrued, via the Evidence Based Practice Individual Incentive Plan, are revoked

for an extended period of time even after those responsible have been placed on segregation. If a weapon is found during a cell search, the entire pod or housing unit is placed on lockdown with privileges rescinded even after the person responsible for the weapon is removed and placed in segregation. Warden, Tracy Ray, and former Assistant Warden, M.A. Bailey, even distributed a July 29, 2016 memo advising us that in-person contact visits with our loved-ones will be cancelled for an entire pod or housing unit based on the number of individuals testing positive for drugs, possessing drugs, or con-spiring to possess drugs. What these instances show is that whenever one or more individuals break prison rules, we are punished as a group. However, VADOC Operating Procedure 866.1 forbids us from submitting group complaints and petitions to redress our grievances. Instead, we are instructed to redress our grievances as individuals although we are consistently punished as a group. This is unfair, unjust, and violates prison policy set forth in the Offender Orientation Manual (OOM) which states that in-dividual rights and privileges should not be revoked "without cause". Also, holding the majority accountable for the actions of a few fosters an environment where a potentially violent conflict can arise between those complying with prison rules and those who do not. Those who follow prison rules may view those who do not as the cause of their suffering when their privileges are rescinded. Creating such a volatile environ-ment violates prison policy set forth in the OOM which says that "The function of Sussex 2 State Prison is to provide a safe and secure environment...." Because group punishment unfairly and unjustly punishes the prison population as a whole

for the actions of a few individuals; results in our individual privileges being rescinded without cause or due process; and fosters an unsafe environment where there's potential for violence. WE demand an immediate end to the use of group punishment as practiced here at S2SP.

7) Inadequate medical care. Medical services here at S2SP are contracted out to a private, for-profit corporation known as Armor Correctional Health Services, Inc. (Armor). This contract is based on the "capitated financing" model where Armor receives a fixed amount money, per prisoner, from the VADOC regardless of the medical treatment required. Under this model, Armor can predict its level of profit depending on the level of care it provides to incarcerated citizens. In other words, the less treatment and care Armor provides, the greater its profits. This capitated financing structure incentivizes substandard medical care and has resulted in the systematic denial of adequate medical care, e.g. delayed responses to our sick call requests; delays in the diagnosis and treatment of our illnesses; failure to refer us, or the delay in referring us, to outside specialists; failure to carry out a specialist's prescribed course or method of treatment; and an almost complete denial of dental treatment. As the U.S. Supreme Court held in Brown v. Plata, 131 S.Ct. 1910, 1928 (2011), "Prisoners are dependent on the State for food, clothing, and necessary medical care. A person's failure to provide sustenance for inmates may actually produce physical torture or a lingering death." Because such conditions as we are suffering from here at S2SP due to medical neglect is a violation of the

8th Amendment's ban against cruel and unusual punishment, WE demand that S2SP immediately began providing us with adequate medical care.

If you believe that everyone should be treated like a human being, with decency, dignity and respect regardless of who or what we are, and not be tortured, abused, and mistreated like we are at Sussex 2 State Prison, the WE ask you to please come to this rally. Tell your family and friends about it. Spread the word about it on social media. Because the state of our very lives and sanity depends upon the willingness of everyday working class citizens, especially the youth, to show up and demand action and accountability, and speak truth to power.