IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UHURU BARAKA ROWE,

       Plaintiff,

v.                                                     CASE NO.  3:19cv418

TRACY S. RAY, *et al.*,

       Defendants.

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT**

      Tracy S. Ray, T.L. Birckhead, B. Perkins, K. Clark, Michelle Carpenter, Natasha Perkerson, C. Coleman, L. Shaw, L. Taylor, and M. Bradley ("Defendants"), by counsel, submit the following Memorandum in support of their Partial Motion to Dismiss for Failure to State a Claim pursuant to Federal Rules of Civil Procedure 12(b)(6).

## Introduction

      Plaintiff Uhuru Rowe ("Rowe" or "Plaintiff"), is a Virginia Department of Corrections ("VDOC") inmate currently incarcerated at Greensville Correctional Center ("Greensville"). In his Amended Complaint (Dkt. No. 25), Rowe seeks to hold Defendants liable for multiple constitutional violations that allegedly occurred while he was incarcerated at Sussex II State Prison ("Sussex II"). Though his Amended Complaint (abbreviated herein as "FAC") does not include specifically enumerated counts, his claims do appear in Paragraphs 58 through 65 of the Amended Complaint. For ease of reference, Defendants have numbered the claims as follows:

- Count 1 (Paragraph 58): On May 8, 2018, Defendants Carpenter, Perkerson, and Birckhead violated Plaintiff's First Amendment rights when they intercepted and

censored his outgoing postal mail containing his position paper at Exhibit B to the Amended Complaint.

- Count 2 (Paragraph 59): On or about May 10, 2018 on information and belief, Defendants Carpenter and Perkerson – under the direction of Defendant Birckhead – violated Plaintiff's First and Eighth Amendment rights when they housed him for 14 days in the Restricted Housing Unit ("RHU").
    - Defendants subdivide this claim as follows:
        - Count 2(a) First Amendment Retaliation Claim
        - Count 2(b) Eighth Amendment Cruel and Unusual Punishment Claim
- Count 3 (Paragraph 60): On or about May 10, 2018, Defendant Coleman violated Rowe's First Amendment rights when he retaliated against Rowe by confiscating or destroying Rowe's reading materials.
- Count 4 (Paragraph 61): On or about May 15, 2018, Defendant Perkins violated Rowe's Eighth and Fourteenth Amendment rights when he did not permit Rowe to appear at a formal due process hearing. [1]
- Count 5 (Paragraph 62): On or about May 30, 2018, Defendants Bradley, Shaw, and Taylor – under the direction of Defendant Clark – violated Rowe's First Amendment rights when they retaliated against him by terminating him from his job assignment.
- Count 6 (Paragraph 63): From June 6, 2018 through June 21, 2018, Defendants Carpenter and Perkerson – under direction from Defendant Birckhead – retaliated

---

[1] A claim regarding a failure to permit Rowe to attend a hearing would plainly fail to state a claim for a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Given the context of the claim and Rowe's *pro se* status, Defendants address this as a Fourteenth Amendment procedural due process claim, not an Eighth Amendment claim.

against Rowe in violation of the First Amendment when they intercepted his JPay e-mails containing the essays at Exhibits I and J to the Amended Complaint.

- Count 7 (Paragraph 64): In May of 2018, Defendant Ray retaliated against Rowe in violation of the First Amendment when he granted Defendant Carpenter's request for a mail cover without just cause.

- Count 8 (Paragraph 65): On or about May 30, 2018, Defendant Clark retaliated against Rowe in violation of the First Amendment when he directed Bradley, Taylor, and Shaw to terminate Rowe from his work assignment.

Defendants summarize their arguments as follows. Count 1 must be dismissed because Rowe specifically seeks compensatory and punitive damages only, and the Prison Litigation Reform Act ("PLRA") bars his claim, absent any physical injury that is more than *de minimis*. As to Count 2, Rowe fails to state a claim for a violation of the Eighth Amendment simply because he was housed in RHU for 14 days. His Amended Complaint is insufficient to support a claim that the conditions of his confinement violated the Eighth Amendment.

Count 3 fails to state a claim against Defendant Coleman because the destruction of an inmate's property – be it willfully or negligently done – fails to state a claim upon which relief can be granted. Moreover, to the extent Rowe alleges that Coleman was retaliating against Rowe in violation of the First Amendment, Rowe fails to allege facts to support Coleman's knowledge that Rowe had previously exercised his protected First Amendment rights. Without this link, Rowe's claim must fail.

Count 4 fails to state a claim against Defendant Perkins because Rowe is not constitutionally entitled to a due process hearing upon being assigned to RHU. The fact that he alleges he was not present for this hearing is of no moment and fails to state a claim.

Count 5 fails to state a claim against Defendants Bradley, Shaw, and Taylor because Rowe fails to link these defendants' decision to terminate him from his job to any facts showing their knowledge that Rowe had exercised his First Amendment rights. Rowe cannot simply allege that every negative thing that happened to him in the 28 days following his intercepted mail was retaliatory; he must allege facts to support a link between the alleged retaliatory action and his protected conduct. For these defendants, he fails to do this.

Count 6 alleges that Defendants Carpenter, Perkerson, and Birckhead retaliated against Rowe when they intercepted his JPay emails containing essays at Exhibits I and J to the Amended Complaint. However, as Rowe's Amended Complaint and accompanying attachments plainly show, the decision to review and intercept Rowe's emails was not motivated solely by his exercise of his First Amendment rights. Staff were concerned for the safety of an employee Rowe named in his communications.

Count 7 fails to state a claim against Defendant Ray for a violation of the First Amendment because it fails to link Defendant Ray's actions to Rowe's exercise of a protected right.

Count 8 fails to state a claim against Defendant Clark for Clark's alleged direction to others to terminate Rowe from his prison job because it fails to link Clark's alleged retaliatory actions to any knowledge that Rowe had previously exercised a constitutional right.

## Factual Allegations

"[W]hen ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "While the court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to

dismiss, a court 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Miller v. Ingles*, No. 1:09cv200, 2009 WL 2175856, at *1 (W.D.N.C. Jul. 14, 2009) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000)). The Court is also not obligated to accept a plaintiff's "'legal conclusions couched as factual allegations.'" *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (quoting *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). So viewed, and as pertinent to this motion, the allegations are as follows:

<u>The Parties</u>

1. Rowe is currently incarcerated at Greensville Correctional Center. FAC ¶ 5.
2. Defendant Tracy S. Ray was the Warden at Sussex II during relevant times. FAC ¶ 6.
3. Defendant Birckhead was the Operations Manager at Sussex II during relevant times. FAC ¶7.
4. Defendant Perkins was the Unit Manager of Housing Unit 3 at Sussex II. FAC ¶ 7.
5. Defendant Clark was a Major and Chief of Security at Sussex II. FAC ¶ 8.
6. Defendant Carpenter was a Lieutenant and Chief Intelligence Officer at Sussex II. FAC ¶ 9.
7. Defendant Perkerson was an Intelligence Officer at Sussex II. FAC ¶ 10.
8. Defendant Coleman was a Sergeant assigned to Housing Unit 1 at Sussex II. FAC ¶ 11.
9. Defendant Shaw was a Senior Counselor and work Program Assignment Reviewer ("PAR") at Sussex II. FAC ¶ 12.
10. Defendant Taylor was the Institutional Program Manager ("IPM") at Sussex II. FAC ¶ 13.

11. Defendant Bradley was the Division of Education ("DOE") Instructor for the Adult Basic Education ("ABE") class at Sussex II. FAC ¶ 14.

Staff Investigation of Rowe

12. Rowe maintains a blog at https://consciousprisoner.wordpress.com. FAC ¶ 18.[2]

13. In February or March of 2018, Defendant Carpenter became aware that Rowe had a blog (FAC ¶ 19) and she began investigating Rowe because of this blog. FAC ¶ 20.

14. Carpenter consulted with Perkerson and Birckhead; Birckhead ultimately advised Carpenter to get a "mail cover" to allow her to read Rowe's incoming and outgoing mail. FAC ¶¶ 21, 22.

15. Defendant Ray granted Carpenter the mail cover "without inquiring why the mail cover was needed and without having been provided with any evidence" that Rowe had abused the mail system. FAC ¶ 24.

16. On May 8, 2018, Carpenter and Perkerson intercepted one of Plaintiff's outgoing letters demanding a rally be held at VDOC headquarters in Richmond, VA. FAC ¶¶ 24-26.

17. On May 10, 2018 Rowe's cell was searched (FAC ¶¶ 27) and 30 minutes later, he was taken to the Restrictive Housing Unit ("RHU"). FAC ¶ 28.

18. Once in RHU, Rowe was supposed to have a hearing before the Institutional Classification Authority ("ICA"). FAC ¶ 29.

19. Though he indicated his desire to be present for that hearing, Perkins conducted the hearing without Rowe present. FAC ¶ 30.

20. On May 24, 2018, Rowe was released from RHU. FAC ¶ 33.

---

[2] Rowe's blog contains multiple posts from May of 2018 through September 22, 2020. CONSCIOUS PRISONER: THE EVOLUTION OF UHURU, https://consciousprisoner.wordpress.com/2020/09 (last visited Sep. 30, 2020).

6

21. Rowe noticed that several of his books and magazines were missing after Coleman had inventoried them. FAC ¶¶ 33, 34.

22. On May 28, 2018, Rowe reported to work as an educational aide for Bradley. FAC ¶ 35.

23. Bradley told Rowe that he had been terminated and that the "decision came down from up top." FAC ¶ 36.

24. Bradley then initiated a work termination request, which Shaw and Taylor approved. FAC ¶ 38.

25. When Rowe inquired with Shaw about the termination, Shaw replied that she received instructions from "Administration" that Rowe was not to work in the education area. FAC ¶ 40.

26. When Rowe inquired again, his request was referred to Shaw, who responded incorrectly that Rowe had not been chosen for the job at that time. FAC ¶ 43-44.

## Legal Argument

**A.   Legal Standards**

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a Rule 12(b)(6) motion to dismiss, the non-moving party's complaint must therefore allege facts that "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). But "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557). While a court should assume the veracity of well-pleaded factual allegations, conclusory statements are not sufficient. *Id.* at 663-64. Moreover, a plaintiff's proffer of bare legal conclusions – without any supporting facts – fails to satisfy this standard. *SD3*, 801 F.3d at 423; *see also Iqbal*, 556 U.S. at 678.

**B.  The PLRA Bars All of Rowe's Claims for Compensatory and Punitive Damages Because he Fail to Allege That he Suffered More Than a *de Minimis* Physical Injury, or any Physical Injury at all**

Congress enacted the Prison Litigation Reform Act ("PLRA") to address a "sharp rise" in prisoner litigation in federal courts. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). A part of the PLRA designed to help courts focus on serious and meritorious prisoner claims is the PLRA's prohibition of claims for emotional injury without a prior showing of a physical injury. *Id.*; *see also* 42 U.S.C. § 1997e(e).[3] Most district courts in this circuit to address this requirement have found that this provision of the PLRA requires more than a mere *de minimis* injury. *See, e.g., Scott v. Carnell*, No. 5:15cv12525, 2016 WL 8722861, at *4 (S.D. W. Va. Jan. 29, 2016) (holding that the PLRA's requirement that an inmate plaintiff allege a physical injury required more than a *de minimis* injury, and finding that allegations of sleeplessness, emotional distress, anxiety, nausea, headaches, etc. after an officer's verbal abuse and harassment were insufficient); *McCoy v. Bazzle*, No. 4:08cv2930, 2009 WL 3169963, at *3 (D.S.C. Sep. 28, 2009) (adopting and applying the Fifth Circuit's holding that under the PLRA, the physical injury had to be more than *de minimis* but need not be significant, and holding that an allegation that an officer touched the plaintiff's buttocks was *de minimis* and failed to satisfy the PLRA's physical injury

---

[3] 42 U.S.C. §1997e(e) states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."

8

requirement); *Calderon v. Foster*, No. 5:05cv696, 2007 WL 1010383, at *8 (S.D. W. Va. Mar. 30, 2007) (finding that physical pain alone is a *de minimis* injury that may be characterized as a mental or emotional injury).

Here, Rowe alleges no physical injury – *de minimis* or otherwise – stemming from any of the claims he attempts to bring. And yet he expressly seeks only compensatory and punitive money damages. All of his claims for damages fail and should be dismissed.

**C.     Count 2(a) Fails to State a Claim for Relief**

In Count 2(a), Rowe alleges that Defendants Carpenter, Perkerson, and Birckhead violated his First Amendment right to be free from retaliation when they placed him in RHU for 14 days. The facts Rowe has alleged are insufficient to support a First Amendment retaliation claim and the claim should be dismissed.

Generally, to state an adequate claim for First Amendment retaliation, an inmate must plead more than "naked allegations of reprisal . . . ." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Specifically, Rowe must show: (1) that he engaged in constitutionally-protected conduct; (2) that a defendant took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018).

As for Element (1) and solely for purposes of this Motion to Dismiss, Defendants accept that Rowe's writings were protected conduct under the First Amendment. Count 2(a) fails, however, at Element (2).

   a.   **Element (2)**

Under Element (2), the fact that a defendant's conduct caused a mere inconvenience is not sufficient. *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (unpublished) (citing

9

*ACLU v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993)). "A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, inter alia, that she suffered some adversity in response to her exercise of protected rights." *Wicomico Cnty*, 999 F.2d at 785 (citing *Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134, 1140 (4th Cir. 1990) (holding that a plaintiff asserting a First Amendment whistle-blower claim under § 1983 "must show that alleged retaliatory action deprived him of some valuable benefit.")). "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." *Wicomico Cnty*, 999 F.2d at 785. Additionally, courts have held that a plaintiff may suffer an "adverse action" if the defendant's "allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Constantine v. Rectors & Visitors of George Mason Unit.*, 411 F.3d 474, 500 (4th Cir. 2005). "This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship." *Thompson v. Clarke*, No. 7:17cv111, 2018 WL 4855457, at *2 (W.D. Va. Oct. 5, 2018) (quoting *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006)). While "'conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, . . . a plaintiff need not actually be deprived of [his] First Amendment rights in order to establish . . . retaliation.'" *Thompson*, 2018 WL 4855457, at *2 (quoting *Constantine*, 411 F.3d at 500). "Nonetheless, 'the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill such activity.'" *Id.*

Here, Rowe in no way alleges any facts to show that his assignment to RHU for 14 days tended to chill the exercise of his First Amendment rights. Indeed, after this purported retaliation, Rowe connected with an attorney to file another case before this Court (*Rowe v. Clarke*, No.

3:18cv780). He filed grievances and requests about the issues in this case (*see, e.g.,* Dkt. Nos. 25-4, 25-5, 25-6, 25-7), and he filed his original complaint in this case on June 5, 2019. More importantly, he continued to post to his blog and never alleges that he felt deterred from doing so. Nothing in Rowe's Amended Complaint explains how a two-week assignment to the RHU chilled his willingness to continue exercising his First Amendment rights. This claim fails at Element (2) and should be dismissed.

### D. Count 2(b) Fails to State a Claim for Relief

In Count 2(b), Rowe contends that Defendants Carpenter, Perkerson, and Birckhead violated his Eighth Amendment rights by placing him in RHU for 14 days. These facts are insufficient to support an Eighth Amendment claim and Count 2 should therefore be dismissed.

First and foremost, an assignment to segregation is not *per se* cruel and unusual punishment under the Eighth Amendment. *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984); *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983); *Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854 (4th Cir. 1975) (holding that ordinary conditions of administrative segregation do not constitute cruel and unusual punishment); *see also Fortune v. Clarke*, No. 7:19cv481, 2020 WL 5649730 (W.D. Va. Sep. 22, 2020) (dismissing an inmate's Eighth Amendment claim even when he claimed to have been assigned to segregation for six months); *Joyce v. Dotson*, No. 7:17cv498, 2018 WL 1830738, at *1-2 (W.D. Va. Apr. 17, 2018) (dismissing summarily similar claims regarding an inmate's assignment to a segregated housing area). Rowe has alleged simply that he was assigned to RHU for 14 days. On its face, the Amended Complaint fails to state a claim for relief and should be dismissed.

Moreover, to state a claim for an Eighth Amendment violation, an inmate plaintiff must show that (1) objectively, the deprivation was sufficiently serious (for example, that prison

officials denied the inmate "the minimal civilized measure of life's necessities") and (2) that subjectively, the defendant officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Rowe's Amended Complaint is completely devoid of any facts to support that his assignment to segregation for 14 days somehow deprived him of "life's necessities." Instead, he baldly concludes that he suffered "physical and psychological torture." FAC ¶ 59. This is insufficient factual information upon which to state a claim for relief. Claim 2(b) should be dismissed.

E.  **Count 3 Fails to State a Claim for a Violation of the First Amendment**

Rowe next claims that Defendant Coleman violated the First Amendment when he confiscated or destroyed Rowe's reading materials. It appears Rowe brings this claim as one alleging retaliation in violation of the First Amendment.[4] However, Rowe has completely failed to allege any facts linking Defendant Coleman's actions to Rowe's writings or other protected First Amendment activity. Thus this claim fails.

The elements of a retaliation claim are enumerated above in Subsection C. As for Element (1) and solely for purposes of this Motion to Dismiss, Defendants accept that Rowe's writings were protected conduct under the First Amendment. His claim fails, however, at Elements (2) and (3).

a.  **Element (2)**

Rowe in no way alleges any facts to show that the destruction or confiscation of his property tended to chill the exercise of his First Amendment rights. Indeed, after this purported retaliation, Rowe connected with an attorney to file another case before this Court (*Rowe v.*

---

[4] To the extent Rowe intends to file a claim for the destruction or loss of the property itself, this would also fail to state a claim. A prison official's negligent or intentional destruction of inmate property is not a constitutional issue. *See, e.g., Wilkins v. Whitaker*, 714 F.2d 4, 6 (4th Cir. 1983) (citing *Palmer v. Hudson*, 697 F.2d 1220, 1223 (4th Cir. 1983)).

*Clarke*, No. 3:18cv720). He filed grievances and requests about the issues in this case (*see, e.g.,* Dkt. Nos. 25-4, 25-5, 25-6, 25-7), and he filed his original complaint in this case on June 5, 2019. Nothing in Rowe's Amended Complaint explains how the loss or destruction of his reading materials chilled his willingness to continue exercising his First Amendment rights. Rowe's claim against Coleman fails at Element (2) and should be dismissed.

    b. **Element (3)**

Under Element (3), the test for causation "requires an inmate to show that, *but for* the exercise of the protected right, the alleged retaliatory act would not have occurred." *Thompson*, 2018 WL 4855457, at *2 (emphasis added) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)); *see also Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)). "[I]t is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [state actor] would not have taken the alleged retaliatory action." *Wall v. Stevens*, 7:16cv373, 2018 WL 626359, at *6 (W.D. Va. Jan. 30, 2018) (citing *Am. Civ. Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 784-86 n.6 (4th Cir. 1993) (quoting *Huang v. Bd. of Governors of the Univ. of NC*, 902 F.2d 1134, 1140 (4th Cir. 1990))). Additionally, an inmate "experiencing an adverse action shortly after a correctional officer learns that the prisoner engaged in a protected activity may create an inference of causation, but, generally, mere temporal proximity is 'simply too slender a reed on which to rest a Section 1983 retaliatory [ ] claim.'" *Thompson*, 2018 WL 4855457, at *2 (quoting *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993)) and (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding an inference of causality only if "the temporal proximity [is] very close")).

13

Here, while Rowe meets the "mere temporal proximity" threshold, his allegations go no further. He alleges only that Coleman destroyed his property soon after Carpenter, Perkerson, and Birckhead found out about his blog and his "position paper" calling for a rally outside of VDOC headquarters. Rowe fails utterly to link Defendant Coleman to Defendants Carpenter, Perkerson, or Birckhead or his protected First Amendment activity. Thus he plainly fails to allege facts showing that his protected First Amendment expression *caused* Coleman to destroy Rowe's property. Rowe fails to state a claim for retaliation against Coleman and this claim should be dismissed.

F.  **Count 4 Fails to State a Claim**

Rowe next attempts to state a First Amendment retaliation claim and a Fourteenth Amendment Due Process claim against Defendant Perkins because Perkins did not permit Rowe to attend a hearing upon Rowe's assignment to the RHU. These allegations fail to state a claim for the reasons outlined below.[5]

   a.  **Count 4 Fails to State a Claim for First Amendment Retaliation**

For many of the same reasons Rowe fails to state a retaliation claim against Coleman, he fails to state a claim against Perkins as well. Elements (2) and (3) are plainly missing here. There is nothing in the Amended Complaint to show that the lack of a hearing somehow impaired Rowe's First Amendment rights or even that it "chilled" his willingness to exercise them. Similarly for Element (3), Rowe fails to link Defendant Perkins's actions to any knowledge of Rowe's protected First Amendment activity. There are zero facts linking Rowe's blog, his letters, or any other protected activity to Perkins's alleged failure to allow Rowe to be present for a

---

[5] It is unclear whether Rowe intends to bring this claim solely as a First Amendment retaliation claim, or as a claim under both the First Amendment and the procedural due process clause of the Fourteenth Amendment. Accordingly, Defendants address the allegations under both amendments.

hearing. Simply because Perkins failed to give Rowe a hearing after other people allegedly retaliated against him does not mean that Perkins also retaliated against Rowe. Without any facts linking Perkins to Rowe's underlying protected activity, his retaliation claim against Perkins must fail.

### b. Count 4 Fails to State a Fourteenth Amendment Claim

To the extent Rowe attempts to bring a Fourteenth Amendment procedural due process claim against Perkins based on the failure to permit Rowe to be present at his ICA hearing, such allegations also plainly fail to state a claim.

Inmates have limited procedural due process rights when it comes to restrictions on their liberty. Under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), such limited rights require procedural due process only when an inmate is faced with the imposition of an "atypical and significant hardship" when compared to "ordinary incidents of prison life." In the Fourth Circuit, this expressly does not include assignments to disciplinary segregation or segregated confinement. *See, e.g., Hall v. McCabe*, No. 8:11-1317-TLW-JDA, 2011 WL 5083219, at *2 (D.S.C. July 8, 2011)(citing *Allgood*, 724 F.2d at 1101; *Ross*, 719 F.2d at 697; *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996)). Rowe's Fourteenth Amendment procedural due process claim plainly fails on its face and should be dismissed.

### G.   Counts 5 and 8 Fail to State a Claim for First Amendment Retaliation

In Counts 5 and 8, Rowe attempts to state a claim for First Amendment retaliation against Defendants Bradley, Shaw, and Taylor (Count 5) and Defendant Clark (Count 8) when these defendants terminated Rowe from his prison job assignment without notice or a hearing. FAC ¶¶ 62, 65. First and foremost, Rowe is not entitled to a hearing upon termination from his prison

job. Because inmates have no constitutionally protected interest in maintaining a work assignment, they have no due process rights upon termination of that assignment. *See, e.g., Williams v. Farrior*, 334 F. Supp. 2d 878, 904 (E.D. Va. 2004) (citing *James v. Quinlan*, 866 F.2d, 627, 630 (3d Cir. 1989); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 n. 3 (10th Cir.1999) (holding that an inmate has no property interest in his prison job); *Miller v. Benson*, 51 F.3d 166, 170 (8th Cir. 1995) (same)). The fact that Rowe did not have a hearing prior to the termination of his work assignment is of no moment. The deprivation of something Rowe was never entitled to have in the first place cannot be retaliatory because it causes not even an inconvenience, much less an imposition on his rights.

Moving on to the retaliation claims against Defendants Bradley, Shaw, Taylor, and Clark, Rowe again fails to satisfy Elements (2) and (3) for a retaliation claim. He fails to explain how the loss of his job somehow impaired his First Amendment rights or chilled his willingness to exercise them. He also fails to link the actions of Bradley, Shaw, Taylor, and Clark to his underlying protected activity. Just like he has failed to do with Defendants Coleman and Perkins, Rowe fails to even allege that Bradley, Shaw, Taylor, and Clark ever knew about his blog or other writings, much less that they would not have terminated him from his job "but for" Rowe's exercise of his First Amendment rights. Claims 5 and 8 fail and should be dismissed.

### H. Count 6 Fails to State a Claim for Retaliation

In Count 6, Rowe asserts that Defendants Carpenter, Perkerson, and Birckhead "intercepted" and "censored" his outgoing JPay emails containing two essays. FAC ¶ 63. He alleges that this was done in retaliation due to the "position paper" and blog that he hosted. This retaliation claim fails at Element (3). As noted above, under Element (3), the test for causation "requires an inmate to show that, *but for* the exercise of the protected right, the alleged

retaliatory act would not have occurred." *Thompson*, 2018 WL 4855457, at *2 (emphasis added)(additional citations omitted). Again, "it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [state actor] would not have taken the alleged retaliatory action." *Wall v. Stevens*, 7:16cv373, 2018 WL 626359, at *6 (W.D. Va. Jan. 30, 2018) (additional citations and quotations omitted).

The deposition transcript Rowe attached to his Amended Complaint proves that any action taken in regard to Rowe's emails was not taken "but for" the exercise of his First Amendment rights. Rather, the testimony shows that Defendant Carpenter had concerns for the safety of a staff member at the prison, as well as the possibility that Rowe's writings may have been linked to an upcoming riot or inmate demonstration of some sort. For example, Carpenter testified as follows:

> A: We had a petition going around for to set a riot to offenders going on hunger strike, not to go to the dining hall. At the time that this petition was going around we couldn't tell if it is . . . we [] had to take it into consider safety for offenders and staff being hurt, so that's when we stepped in.
>
> Dkt. No. 25-1, p. 17, Carpenter Dep. Trans. 53:9-17.

Carpenter also testified that Rowe had signed this petition (Dkt. No 25-1, p. 18, Carpenter Dep. Trans. 55:17-18) and that her knowledge about the riot and the petition informed her decision to stop Rowe's emails. Dkt. No. 25-1, p. 18, Carpenter Dep. Trans. 56:17-22. Additionally, Carpenter was concerned that the contents of Rowe's emails might endanger a staff member, Mr. Mills. Dkt. No. 25-1, p. 19, Carpenter Dep. Trans. 59:4-17. Rowe had written that Mr. Mills was responsible for an offender's death, and Rowe apparently believed Mills could have prevented the death. *Id*. Carpenter was concerned that if the deceased offender's family

17

read that information and thought it was true, they might attempt to hurt Mr. Mills. *Id.*; *see also* Dkt. No. 25-1, p. 12, Carpenter Dep. Trans. 32:3-4.

There is no question that Rowe's emails included complaints about the conditions at Sussex II and that he has a First Amendment right to discuss those complaints with people outside of the prison. But his writings also included an allegation that a staff member was responsible for another offender's death. Defendant Carpenter plainly had concerns for that staff member's safety, given the spread of what she believed to be inaccurate information about the staff member's involvement and the circumstances of the offender's death. Her decision to intercept any of Rowe's JPay emails was based, in part, on her concern for this staff member. By his own allegations and supporting documentation, Rowe's Amended Complaint plainly shows that Carpenter did not "censor" his emails simply because Rowe exercised his First Amendment right to complain about Sussex II. She did so because she was concerned for the well-being of a staff member. Rowe's retaliation claim fails on its face and should be dismissed.

**I.     Count 7 Fails to State a First Amendment Retaliation Claim**

In Claim 7, Rowe posits that Defendant Ray retaliated against him when he granted Carpenter's request for a mail cover, thereby granting Carpenter permission to open and read Rowe's mail. This claim plainly fails to allege any facts supporting retaliation. In fact, Rowe himself alleges that Ray issued the mail cover "without inquiring why the mail cover was needed and without having been provided with any evidence that Plaintiff had used his correspondence to engage in illegal or criminal activities." FAC ¶ 23. Rowe takes issue with Ray's issuance of the mail cover, but plainly alleges that Ray granted Carpenter the mail cover when Ray had no knowledge of any of the underlying circumstances of Rowe's conduct. Clearly then, Ray's

issuance of the mail cover cannot have been in retaliation for activities Rowe himself alleges were not disclosed to Ray. This claim fails on its face and should be dismissed.

## Conclusion

Defendants respectfully move for dismissal of all counts for the reasons outlined herein. Rowe fails to allege sufficient facts to make out a claim for relief in Counts 2 through Count 8, and the claims should be dismissed. Moreover, Rowe seeks compensatory damages from each defendant in the amount of $5,000, plus punitive damages in the amount of $20,000 from each defendant. The plain language of the PLRA bars his request for compensatory and punitive damages in this case.

Respectfully submitted,

TRACY S. RAY, T.L. BIRCKHEAD, B. PERKINS, K. CLARK, MICHELLE CARPENTER, NATASHA PERKERSON, C. COLEMAN, L. SHAW, L. TAYLOR, and M. BRADLEY

By:     s/Laura Maughan
Laura Maughan, VSB #87798
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 786-0030
(804) 786-4239 (Fax)
Email: lmaughan@oag.state.va.us

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 1st day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following: n/a.

    I also hereby certify that I have sent the document, postage prepaid, to the following non-CM/ECF user:

    Uhuru Baraka Rowe, # 1131545
    Greensville Correctional Center
    901 Corrections Way
    Jarratt, Virginia 23870

                                                             s/Laura Maughan
                                                      Laura Maughan, VSB #87798
                                                      Assistant Attorney General