IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



UHURU BARAKA ROWE,
    Plaintiff,

V.                                     Civil Action No. 3:19cv418

TRACY S. RAY, et al.,
    Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Plaintiff, Uhuru Baraka Rowe ("Rowe"), proceeding pro se, filed an Amended Section 1983 Complaint ("AC") in this case on May 18, 2020. Defendants, by Counsel, have filed a Partial Motion to Dismiss ("Defendants' Motion") Rowe's AC on October 1, 2020. Rowe's claims for relief are stated in paragraphs 58-65 of his AC and have been re-stated and renumbered in Defendants' Motion as follows:

Count 1 (Paragraph 58): On May 8, 2018, Defendants Carpenter,

Perkerson, and Birckhead violated Plaintiff's First Amendment rights when they intercepted and censored his outgoing postal mail containing his position paper at Exhibit B to the Amended Complaint.

Count 2 (a) (Paragraph 59): On or about May 10, 2018 on information and belief, Defendants Carpenter and Perkerson - under the direction of Defendant Birckhead - violated Plaintiff's First Amendright when they housed him for 14 days in the Restricted Housing Unit ("RHU"). (First Amendment Retaliation Claim)

Count 2 (b) (Paragraph 59): On or about May 10, 2018 on information and belief, Defendants Carpenter and Perkerson - under the direction of Defendant Birckhead - violated Plaintiff's First Amendment right when they housed him for 14 days in the Restricted Housing Unit ("RHU"). (Eighth Amendment Cruel and Unusual Punishment Claim)

Count 3 (Paragraph 60): On or about May 10, 2018, Defendant Coleman violated Rowe's First Amendment right when he retaliated against Rowe by confiscating or destroying Rowe's reading materials.

Count 4 (Paragraph 61): On or about May 15, 2018, Defendant Perkins violated Rowe's Eighth and Fourteenth Amendment rights when he did not permit Rowe to appear at a formal due process hearing.

- Count 5 (Paragraph 62): On or about May 30, 2018, Defendants Bradley, Shaw, and Taylor - under the direction of Defendant Clark - violated Rowe's First Amendment rights when they retaliated against him by terminating him from his job assignment.

- Count 6 (Paragraph 63): From June 6, 2018 through June 21, 2018, Defendants Carpenter and Perkerson - under the direction of Defendant Birckhead - retaliated against Rowe in violation of the First Amendment when they intercepted his JPay e-mails containing the essays at Exhibit I and J to the Amended Complaint.

- Count 7 (Paragraph 64): In May of 2018, Defendant Ray retaliated against Rowe in violation of the First Amendment when he granted Defendant Carpenter's request for a mail cover without just cause.

- Count 8 (Paragraph 65): On or about May 30, 2018, Defendant Clark retaliated against Rowe in violation of the First Amendment when he directed Bradley, Taylor, and Shaw to terminate Rowe from his work assignment.

Rowe submits the following Opposition to Defendants' Partial Motion to Dismiss Counts 2-8.

## A. ROWE IS ENTITLED TO DAMAGES

Defendants argue that all of Rowe's claims for compensatory and punitive damages should be dismissed because he fails to allege that he suffered more than a de minis physical injury or any physical injury at all.

It is true that the Prison Litigation Reform Act (PLRA) precludes a prisoner from obtaining money damages for mental and emotional injury without a prior showing of physical injury. 42 U.S.C. §1997e(e). However, Rowe is not asserting a claim of 'mental and emotional injury.' He is asserting a First Amendment retaliation claim.

In 1998, the 9th Circuit Court of Appeals in <u>Canell v. Lightner</u> ruled that because a plaintiff was not asserting a claim for mental and emotional injury but rather a claim for a violation of his First Amendment rights, such a claim entitled him to "judicial review wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, §1997e(e) [of the PLRA] does not apply to First Amendment claims regardless of the form of relief sought." <u>Id.</u> 143 F.3d at 1213.

Additionally, a U.S. District Court in Michigan ruled that "because First Amendment violations rarely, if ever, result in physical injuries, construction of the PLRA against recovery of damages would defeat congressional intent and render constitutional protections meaningless." The court also ruled that "If §1997e(e) is applied to foreclose recovery in First Amendment actions, it would place the First Amendment itself on shaky constitutional ground." Siggers-El v. Barlow, 433 F. Supp. 2d 811, 816 (E.D. Mich. 2006).

Because Rowe has raised a true First Amendment retaliation claim, §1997e(e) of the PLRA should not be applied to his case and his claims for money damages should not be dismissed.

Even if the Court is of the opinion that §1997e(e) is applicable to this case, Rowe has asked for other relief besides money damages, such as a declaration that the actions taken against him by Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, and any additional relief this Court deems just proper and equitable. As such, none of his claims should be dismissed.

### B. ALL OF ROWE'S CLAIMS STATE A VALID CLAIM FOR RELIEF

Defendants argue that Counts 2-8 fail to state a valid

claim for relief. Defendants concede that Rowe's position paper at Exhibit B to his AC constitutes protected conduct but that all counts should be dismissed for various overlapping reasons.

Count (2a). Defendants argue this claim should be dismissed because Rowe failed to prove that he suffered adverse actions which affected his First Amendment rights or that chilled his desire to exercise that right.

In his AC, Rowe states that as a result of authoring a position paper criticizing conditions at the prison he was, among other things, placed in the RHU where he suffered physical and psychological torture for 14 days.

At the time, prisoners assigned to the RHU at Sussex II State Prison ("Sussex") did not have access to JPay kiosks to send e-mails to their loved-ones. Rowe's main - and sometimes only - method for sending his writings to outside acquaintances is via the JPay Kiosk. So not only was Rowe subjected to adverse actions for excersizing his First Amendment right, his placement in the RHU had a definite chilling effect because it prevented him from accessing the JPay Kiosk to send his writings to outside acquaintances. As such this count should not be dismissed.

Count (2b). Defendants argue this count should be dismissed

because the facts alleged herein are insufficient to support an Eighth Amendment claim. The Defendants state that "an assignment to segregation is not per se cruel and unusual punishment."

Though Defendants isolated this count from count (2a), Rowe reminds the court that this is a First Amendment retaliation case, not an Eighth Amendment violation case. Therefore, even though Rowe's placement in the RHU for 14 days may not, by itself, rise to the level of cruel and unusual punishment, it violates the Eighth Amendment because Defendants deliberately placed Rowe in the RHU for engaging in conduct they concede is protected under the First Amendment. In addition to Rowe's mental and physical suffering while in the RHU, prisoners in the RHU are denied access to the JPay Kiosks as explained in his response to count (2a). Consequently, he was denied a basic human need in that he was prevented from communicating his thoughts to his outside acquaintances which rose to the level of cruel and unusual punishment.

Count (3). Defendants argue this count should be dismissed because Rowe "failed to allege any facts linking Defendant Coleman's actions to Rowe's writings or other protected activity."

In each of the claims presented in his AC, Rowe states that the actions of each Defendant, including Defendant Coleman, "was part of a larger conspiracy" among Defendants "to retaliate against him for his protected speech." The Merriam-Webster's Collegiate Dictionary, Eleventh Edition, defines a conspiracy as "an agreement among conspirators". The Merriam-Webster's Dictionary of Law (1996) defines a conspiracy as "an agreement between two or more people to commit an act prohibited by law or two commit a lawful act by means prohibited by law." The success of such a conspiracy, as in Rowe's case, often depends and relies on a "conspiracy of silence" which Merriam-Webster's Collegiate Dictionary defines as "a secret agreement to keep silent about an occurrence, situation, or subject [] in order to promote or protect self-interests".

Because this code and culture of silence and secrecy exist[ed] among the Defendants who retaliated against Rowe for blowing the whistle on conditions at the prison, it is impossible for Rowe to provide a clear link between Defendant Coleman and Rowe's writings or between Defendant Coleman and the other Defendants

in this case. Truthfully, it would be unfair to require Rowe to do so at this early stage of the case where depositions and discoveries have not been had to flesh out the details of the conspiracy and what role each Defendant may have played in the conspiracy. Furthermore, a liberal construction of a pro se §1983 complaint "requires that the judge view all of [the] allegations not as isolated incidents, but rather as a unit". <u>Russel v. Oliver</u>, 552 F. 2d 115, 116 (4th cir. 1977). Therefore, this claim should not be dismissed.

    Count (4). Defendants argue this count should be dismissed for the same reason as count (3). Rowe has alleged in his AC that Defendant Perkins' refusal to allow him to appear at a formal due process hearing "was part of a larger conspiracy... to retaliate against him for his protected speech." As Rowe articulated in his reply to Count (3), his allegation of a conspiracy should be sufficient enough to establish a link and that, at this particular stage of the case, discoveries and depositions need to be had in order to flesh out details of the conspiracy and what role Defendant Perkins may have played in the conspiracy.

in this case. Truthfully, it would be unfair to require Rowe to do so at this early stage of the case where depositions and discoveries have not been had to flesh out the details of the conspiracy and what role each Defendant may have played in the conspiracy. Furthermore, a liberal construction of a pro se §1983 complaint "requires that the judge view all of [the] allegations not as isolated incidents, but rather as a unit". <u>Russel v. Oliver</u>, 552 F. 2d 115, 116 (4th cir. 1977). Therefore, this claim should not be dismissed.

    Count (4). Defendants argue this count should be dismissed for the same reason as count (3). Rowe has alleged in his AC that Defendant Perkins' refusal to allow him to appear at a formal due process hearing "was part of a larger conspiracy... to retaliate against him for his protected speech." As Rowe articulated in his reply to Count (3), his allegation of a conspiracy should be sufficient enough to establish a link and that, at this particular stage of the case, discoveries and depositions need to be had in order to flesh out details of the conspiracy and what role Defendant Perkins may have played in the conspiracy.

Additionally, Defendants' refusal to allow Rowe to appear at a formal due process hearing created an "atypical and significant hardship in relation to the ordinary incidents of prison life" because it resulted in Rowe spending more time in the RHU and prevented him from transmitting his writings to outside acquaintances because the RHU does not allow access to JPay kiosks. As such, Rowe has stated a valid claim of relief and this count should not be dismissed.

Counts (5) and (8). Defendants argue these counts should be dismissed because "Rowe is not entitled to a hearing upon termination from his prison job." They also reason that "Because inmates have no constitutionally protected interest in maintaining a work assignment, they have no due process rights upon termination of that assignment." Because this is a First Amendment retaliation case, the question is not whether Rowe has a protected interest in maintaining a work assignment, it's whether he can be removed from a work assignment for engaging in protected conduct.

It is true that inmates have no constitutionally protected interest in maintaining a prison job but they do have a protected interest in not being terminated from one for retaliatory reasons. See DeWalt v.

Carter, 224 F.3d 607, 618-19 (7th Cir. 2000); Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991); Pate v. Peel, 256 F. Supp. 2d 1326, 1336-40 (N.D. Fla. 2003). Similarly, Rowe's allegation of being terminated from his job for retaliatory reasons, with no opportunity to be present at a hearing to be notified of the reasons for his termination, sets forth a valid First Amendment retaliation claim under §1983 and should not be dismissed.

Count (6). Defendants argue this count should be dismissed because Rowe failed to prove that "but for the exercise of the protected right, the alleged retaliatory act would not have occurred." In an attempt to substantiate their argument, the Defendants point to the deposition transcript of Defendant Carpenter, at Exhibit A to Rowe's AC, in which Defendant Carpenter tried to justify her censorship of Rowe's writings on her concern for the safety of a staff member Rowe criticized in his essays.

It is important to note here that Rowe's use of the term "censor" as used in this count is not Rowe's legal conclusion. It is a term repeatedly used by Defendant Carpenter during her

deposition in a companion case to describe her stoppage and withholding of Rowe's JPay e-mails. (See Carpenter Deposition Transcript 13:5, 14:3, 15:3, 26:14, 27:18).

It is also important to note that during the same deposition, Defendant Carpenter testified that her and Perkerson's investigation of Rowe and monitoring of his writings began when they received "information" from a non-security prison staff that Rowe had a blog; their investigation of Rowe for his blog occurred three months prior to their interception of his position paper and four months prior to the censorship of his two essays at Exhibits H and I to his AC. (Id. at 10:20-13:5; 19:20-21:8). So any claim by Defendant Carpenter that her censorship of Rowe's e-mails was done out of concern for the safety of a staff member is misleading. The only motivation for the censorship was to prevent Rowe from posting his writings to his blog; writings that were critical of conditions and officials at the prison.

Rowe has proven a causal connection between Defendants' discovery of Rowe's blog, Defendants' interception of Rowe's position paper, and Defendants' stoppage or censorship of his outgoing JPay emails. Rowe has proven that, but for his protected conduct, the stoppage

or censorship of his JPay e-mails would not have occurred. Defendants, on the other hand, did not even attempt to prove that, even without their discovery of Rowe's blog or his position paper, all of the actions taken against him, including the censorship of his essays, would have occurred anyway. As such, Rowe has stated a valid claim for relief and this count should not be dismissed.

Count (7). For purposes of this Opposition brief only, Rowe concedes that Defendant Ray is not liable as described in this Count and that it should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss all counts, except for count(7), should be denied.

Respectfully submitted,

*Uhuru Rowe*
Uhuru Baraka Rowe

Page 13 of 14

## CERTIFICATE OF SERVICE

I, Uhuru Baraka Rowe, hereby certify that on the 1st day of ~~November~~ December, 2020, a true copy of this Plaintiff's Opposition to Defendants' Partial Motion to Dismiss was mailed by certified mail, postage prepaid, to counsel for Defendants at:

    Laura Maughan, Asst. Attorney General
    Office of the Attorney General
    Criminal Justice & Public Safety Division
    202 North 9th Street
    Richmond, Virginia 23219

                                                 */s/ Uhuru Rowe*
                                                 Uhuru Baraka Rowe