IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UHURU BARAKA ROWE,

    Plaintiff,

v.                     Civil Action No. 3:19CV418

GREGORY L. HOLLOWAY, et al.,

    Defendants.

### MEMORANDUM OPINION

Uhuru Bakara Rowe, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action. In his Amended Complaint ("Complaint," ECF No. 25),[1] Rowe alleges that Defendants[2] violated his First, Eighth, and Fourteenth Amendment rights respecting actions taken in connection with his essays commenting on prison life that he attempted to mail to persons outside the institution. The matter is before the Court on the PARTIAL MOTION TO DISMISS ("Motion to Dismiss," ECF No. 41) filed by Defendants

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system.

[2] Defendants are all employed at Sussex II State Prison ("Sussex"). Tracy Ray is the Warden, T.L. Birckhead is the Operations Manager, B. Perkins is the Chief of Security, Michelle Carpenter is the Chief Intelligence Officer, Natasha Perkerson is an Intelligence Officer, C. Coleman is a Sergeant in Housing Unit 1, L. Shaw is the Senior Counselor and Work Program Assignment Reviewer, L. Taylor is the Institution Program Manager, and M. Bradley is the Division of Education Instructor for the Adult Basic Education class (collectively, the "Defendants"). (ECF No. 25, at 1-3.)

and pursuant to the Court's screening obligations under 28 U.S.C.
§§ 1915(e)(2) and 1915A.  Rowe has filed PLAINTIFF's OPPOSITION TO
DEFENDANT'S PARTIAL MOTION TO DISMISS.  ("Response," ECF No. 45.)
For the reasons set for below, the Court will grant in part, and
deny in part, the Motion to Dismiss and also will dismiss several
claims as legally insufficient and frivolous.

## I. PROCEDURAL HISTORY

This is the second of such actions filed by Rowe alleging
that the same core group of Defendants violated his rights with
respect to his political essays.  In the prior action, Rowe was
represented by counsel.  Because the allegations stemmed from the
same events, by Memorandum Order entered on August 2, 2019, the
Court directed Rowe as follows:

> A review of the Court's docket reveals that Rowe,
> by counsel, is currently litigating substantially
> similar claims from the same time period against some of
> the same defendants.  See Rowe v. Clarke, No. 3:18CV780
> (E.D. Va. filed Nov. 8, 2018) (the "2018 Case").  By
> Order (ECF No. 21) dated June 13, 2019, the Court
> dismissed the 2018 Case with leave to file an amended
> complaint.   Rowe has now filed a Second Amended
> Complaint in the 2018 Case and Defendants have noted
> appearances therein.  See Rowe, No. 3:18CV780 (E.D. Va.
> filed Jan. 11, 2019); ECF Nos. 23, 24.  The Court fails
> to discern why Rowe should be permitted to litigate a
> separate pro se action that is based on virtually the
> same facts and allegations as those in the 2018 Case,
> that is filed against some of the same defendants in
> that case.  Moreover, Rowe has now had an opportunity to
> amend his complaint in the 2018 Case to incorporate all
> claims and defendants.
> Accordingly, Rowe is directed to show good cause,
> within twenty (20) days of the date of entry hereof, why
> he should be permitted to litigate a second action pro

2

se while he has a similar action pending.  Rowe must
also demonstrate why allowing a second action to proceed
simultaneously furthers the interests of judicial
economy and efficiency.

(ECF No. 3.)  Rowe responded, and stated as follows:

     1.   The 2018 Case concerns the censorship of two
of Rowe's political essays titled "Life at Sussex 2 State
Prison-Revisited" and "Sussex 2 State Prison is a
Potempkin Prison" which he attempted to send to an
outside acquaintance via JPay electronic secure
messaging on or about June 1, 2018.
     2.   The pro se 2019 Case concerns a position paper
which Rowe authored and attempted to mail to an outside
acquaintance via postal mail on or about May 8, 2018.
     3.   The two claims presented in the 2018 Case are
the violation of Rowe's First Amendment right to free
speech and his Fourteenth Amendment right to Due Process
associated with the censorship of his political essays
listed in paragraph 1.
     4.   The two claims presented in the pro se 2019
Case are government (i.e. Sussex II State Prison
officials) retaliation against Rowe associated with his
exercise of free speech in authoring a position paper
that was highly critical of prison officials.  The
retaliatory actions taken against Rowe includes, among
various other actions outlined in his pro se 2019
complaint, the censorship of the two essays listed in
paragraph 1 above.  These retaliatory actions, too,
violated Rowe's First and Fourteenth Amendment rights.

(ECF No. 5, at 2-3.)[3]  By Memorandum Order entered on September

25, 2019, the Court allowed the 2019 action to proceed.

   By Memorandum Opinion and Order entered on January 22, 2020,

the Court dismissed the Second Amended Complaint in the 2018 Case

because he lacked standing to bring a claim for injunctive relief

---

     [3] Although he was not asked to file a response to the Court's
Memorandum Order in this action, counsel for the 2018 Case
submitted a letter indicating that he "do[es] not believe [the pro
se case] is in any conflict with the case in which [he] is
representing [Rowe]."  (ECF No. 4, at 1.)

and he failed to state a First or Fourteenth Amendment claim. <u>See</u> <u>Rowe v. Clarke</u>, No. 3:18CV780, 2020 WL 365103, at *1-11 (E.D. Va. Jan. 22, 2020), <u>aff'd</u> 829 F. App'x 634 (4th Cir. 2020). Since the date when Court granted Rowe permission to proceed with this action, and after the Court dismissed all the claims in the 2018 Case, Rowe filed an Amended Complaint, and his claims expanded from two to eight. (ECF No. 25.) Many of the underlying facts are similar as to those alleged in the 2018 Case, and these cases are therefore, intertwined. To the extent that the Court has already found a similar claim lacking in the 2018 Case, the Court will not engage in an extensive and repetitive discussion but will summarily dismiss the claim here as a matter of judicial economy, to avoid duplicitous litigation, and because the Court can consider a litigants past filings. <u>Cf.</u> <u>Cochran v. Morris</u>, 73 F.3d 1310, 1316 (4th Cir. 1996) ("A plaintiff's past litigious conduct should inform a district court's discretion under § 1915[(e)(2)]." (citation omitted)).

## II. CONSIDERATION OF EXTRINSIC EVIDENCE

It appears that Rowe's claims of retaliation derive almost entirely from information that he learned during discovery in the 2018 Case, and many of the facts alleged in his Complaint come directly from the Deposition of Defendant Carpenter in that case. (<u>See</u> ECF No. 25-1.) Rowe attached the deposition to his Complaint, along with copies of his position papers, and copies of various

4

grievances he submitted.   The parties rely on these records extensively in their arguments.   Notably, Defendants rely on Defendant Carpenter's deposition to argue that Rowe's claims of retaliation lack merit.   While the information in this deposition may ultimately be fatal to Rowe's claims, Defendants fail to offer any explanation as to why this Court can consider this extrinsic evidence in the context of a Motion to Dismiss.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   Fed. R. Civ. P. 12(d); see Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998); Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985).   However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed."   Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (citations omitted).   When reviewing a motion to dismiss, the Court may consider materials outside of the pleadings if the materials are "integral to and explicitly relied on in the complaint."   Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (citation

omitted).  While the authenticity of the documents attached to the Complaint is not disputed, and the materials are "integral to and explicitly relied on in the complaint," see id., both Rowe and Defendants have cherry-picked information from Defendant Carpenter's deposition as it serves their needs.  Because Defendants have failed to provide any argument, much less, persuasive argument, demonstrating that the Court may consider Defendant Carpenter's deposition under Fed. R. Civ. P. 12(b)(6), the Court must exclude any arguments relying specifically on the deposition at this juncture.[4]

### III. STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A.  The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where

---

[4] Although the Court could convert this Motion to Dismiss into a Motion for Summary Judgment, it declines to do so sua sponte. "[C]onversion of a motion to dismiss to one for summary judgment requires that '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation, 532 F. App'x 332, 334 (4th Cir. 2013) (alteration in original) (citation omitted).  Because the Court finds many of Rowe's claims fail to meet the standard to survive Fed. R. Civ. P. 12(b)(6), the Court dismisses those here, and will then allow the parties to file a motion for summary judgment with respect to the remaining claims.

the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second

7

alteration in original) (citation omitted).   Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted).   Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." Id. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV.   SUMMARY OF ALLEGATIONS AND CLAIMS

Rowe asserts that he "is a socially conscious and politically active prisoner who . . . writes essays and position papers that are often critical [of] prison conditions and prison officials." (ECF No. 25, at 3.)[5] Rowe alleges that one of his position papers, titled, "A Call To Action" and was "dated May 8, 2018, contained a detailed description of what [Rowe] believed were unconstitutional and inhumane conditions at [Sussex]" including, "dirty and potentially contaminated drinking water, substandard food, arbitrary group punishment, critical understaffing levels, and the preventable deaths of over 12 prisoners due to deliberate indifference, neglect, and drug overdoses." (Id. at 5.) Notably, "the position paper also contained a recommendation that a peaceful rally be held at the headquarters of the Department of Corrections (VDOC) in Richmond, Virginia in order to raise public awareness about the issues detailed in the position and to pressure VDOC officials to remedy those issues." (Id.) Rowe "routinely mails his writings to outside acquaintances via U.S. postal mail and JPay secure electronic messaging (JPay emails)" and his "acquaintances then post them on his blog at https://consciousprisoner.wordpress.com in an effort to raise

---

[5]  The Court corrects the punctuation, spelling, and capitalization in quotations from Rowe's submissions.

public awareness about what [Rowe] believes to be inhumane prison conditions." (Id. at 4.)

According to Rowe, in February or March of 2018, Defendants Carpenter and Perkenson learned that Rowe had a blog, and Defendant Carpenter advised Defendant Perkerson to speak with Defendant Birckhead about how to "obtain a mail cover that will allow them to monitor, open and read [Rowe's] incoming and outgoing mail."[6] (Id. (citation omitted.)) "Defendant Birckhead instructed Defendants Carpenter and Perkerson on how to request the mail cover from Defendant Ray" and Defendant Ray granted the request "without inquiring why the mail cover was needed." (Id. at 4-5 (citation omitted).) On May 8, 2018, Defendants Carpenter and Perkenson intercepted an outgoing letter of Rowe's that contained the position paper. (Id. at 5.) "On the morning of May 10, 2018, [Rowe's] cell was searched by two subordinate intelligence officers who were, upon information and belief, acting under the direction of Defendant Carpenter." (Id.) After the cell search, Rowe was moved to the Restrictive Housing Unit ("RHU"). (Id. at 5-6.)

_____

[6] As explained in the 2018 Case, "A 'mail cover' is the 'process by which a nonconsensual record is made of any data appearing on the outside cover of any sealed or unsealed class of mail matter, or by which a record is made of the contents of any unsealed class of mail matter as allowed by law, to obtain information . . . .'" Rowe, 2020 WL 365103, at *2 n.5 (citing 39 C.F.R. § 233.3(c)(1)).

In RHU, Rowe was issued an Institutional Classification Authority ("ICA") Hearing Notification Form notifying Rowe that he was scheduled to appear at hearing on or after May 15, 2018.  (Id. at 6.)  Rowe "checked the box on the ICA form indicating his desire to attend the hearing, [but] he was denied the right to do so when Defendant Perkins conducted the hearing without Plaintiff being present."  (Id.)  Rowe indicates that on May 15, 2018, he was interviewed by Defendants Carpenter and Perkerson who informed him that he would stay in RHU until the end of their investigation. (Id.) It is unclear whether Rowe was charged with any offense at that time.  On May 24, 2018, Rowe was released back into General Population and was provided with "his personal property that had been inventoried and stored by Defendant Coleman," and Rowe "noticed that several of his political books and magazines were missing and had been either stolen or confiscated by Defendant Coleman."  (Id. at 6-7.)

On May 28, 2018, Rowe reported to his work assignment as a Department of Education aide, but Defendant Bradley informed him that he had been terminated and that "[t]he decision came down from up top."  (Id. at 7.)  On May 30, 2018, Defendants Shaw and Bradley approved Defendant Bradley's termination request without a hearing.  (Id. at 7-8.)  In response to several inmate requests submitted by Rowe, Defendant Shaw informed Rowe that the she was instructed by the Administration that Rowe was not permitted to

work in the education area of the prison. (Id. at 8.) Rowe also requested to see the "a copy of the Incident Report that would reflect the specific reason(s) why he was terminated from his job," but Defendant Clark denied that request noting that, "[n]o incident reports will be forwarded to offenders," and that as Chief of Security, he can choose which inmates work in certain areas and that he "did not choose [Rowe] at that time." (Id. at 8-9.)

Rowe next repeats the allegations from the 2018 Case, summarized briefly as follows. On June 1, 2018, Rowe attempted to send out two political essays by JPay email, however, the essays were intercepted and censored due to the mail cover. (Id. at 10.) On June 6, 20, and 21, 2018, Rowe received ten notifications advising him that "the JPay e-mails containing the above two essays had been censored due to a 'violation of COPD, Law, or DOC Policy." (Id.)

The parties have agreed that Rowe's claims are as follows ("Statement of Claims"):[7]

---

[7] Rowe adopts this statement of his claims provided by Defendants. (ECF No. 45, at 1-3.) This statement of Rowe's claims excludes any mention of the Fourteenth Amendment in his retaliation claims (Claims One, Two, Three, Five, Six, Seven, and Eight) and, therefore, the Court will not consider these as alleging such a violation. Even if Rowe had insisted that these claims alleged a Fourteenth Amendment violation too, he cannot assert a substantive due process claim of retaliation under the Fourteenth Amendment because the explicit text of the First Amendment protects his rights. See City of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of a constitutional protection against a particular sort of government behavior, that Amendment, not the more general notion

Claim One:        On May 8, 2018, Defendants Carpenter, Perkerson, and Birckhead violated Rowe's First Amendment rights when they intercepted and censored his outgoing postal mail containing his position paper. (<u>Id.</u> at 11.)

Claim Two:        Defendants Carpenter and Perkerson, under the direction of Defendant Birckhead, (a) related against Rowe in violation of the First Amendment, and (b) subjected him to cruel and unusual punishment under the Eighth Amendment when they housed him in the RHU for fourteen days. (<u>Id.</u>)

Claim Three:      Defendant Coleman violated Rowe's First Amendment rights when he retaliated against Rowe by confiscating or destroying his reading materials. (<u>Id.</u> at 11-12.)

Claim Four:       Defendant Perkins violated Rowe's (a) Eighth, and (b) Fourteenth Amendment rights when he did not allow Rowe to attend the formal due process hearing. (<u>Id.</u> at 12.)

Claim Five:       Defendants Bradley, Shaw, and Taylor, under the direction of Defendant Clark, violated Rowe's First Amendment rights when they retaliated against him by terminating him from his job assignment. (<u>Id.</u>)

Claim Six:        In June 2018, Defendants Carpenter and Perkerson, under the direction of Defendant Birckhead, retaliated against Rowe in violation of the First Amendment when they intercepted his JPay emails containing his two political essays. (<u>Id.</u> at 12-13.)

Claim Seven:      Defendant Ray retaliated against Rowe in violation of the First Amendment when he granted Defendant Carpenter's request for a mail cover. (<u>Id.</u> at 13.)

---

of substantive due process, must be the guide for analyzing these claims." (quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.) (plurality opinion))). Accordingly, the Court will only address the retaliation claims under the First Amendment.

Claim Eight:      Defendant Clark retaliated against Rowe in
                  violation of the First Amendment when he
                  directed Defendants Bradley, Taylor, and Shaw
                  to terminate Rowe from his work assignment.
                  (Id.)

Rowe demands monetary damages and declaratory relief. (Id. at 33-
34.) Rowe's claims are pled in a disjointed manner, and are not
easily addressed in order, by type of claim, or temporally. The
Court first addresses the First Amendment retaliation claims,
which requires some unavoidable repetition, and then subsequently
addresses the Due Process and Eighth Amendment claims. Finally,
the Court addresses Rowe's allegations of an overarching
conspiracy.

## V.  ANALYSIS

### A.  No Physical Injury

Defendants first argue that Rowe fails to demonstrate any
entitlement to relief because he alleges no physical injury as
required to recover damages by the Prison Litigation Reform Act
("PLRA"), 42 U.S.C. § 1997e(e). The pertinent statute provides:
"No Federal civil action may be brought by a prisoner confined in
a jail, prison, or other correctional facility, for mental or
emotional injury suffered while in custody without a prior showing
of physical injury." Id. However, Rowe's claims do not involve
mental or emotional injury, but seeks compensatory and punitive
damages, and Defendants fail to sufficiently address why the PLRA
should limit other types of recovery such as nominal or punitive

14

damages.  Indeed, courts have found that "Congress did not intend section 1997e(e) to bar recovery for all forms of relief."  Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004) (citations omitted) (allowing recovery for nominal and punitive damages under § 1983); see also Logan v. Hall, 604 F. App'x 838, 840 (11th Cir. 2015) (explaining that while "§ 1997e(e) foreclosed claims for both compensatory and punitive damages[,] . . . . [n]ominal damages, however, are not precluded").

Moreover, Rowe brings the majority of his claims under the First Amendment.[8]  Defendants also fail to adequately address the applicability of § 1997e(e) to First Amendment claims.  See King v. Zamiara, 788 F.3d 207, 211-17 (6th Cir. 2015) (discussing the applicability of § 1997e(e) to First Amendment claims and concluding that "deprivations of First Amendment rights are themselves injuries, apart from any mental, emotional or physical injury that might arise from the deprivation, and that § 1997e(e) does not bar all relief for injuries to First Amendment rights").  But see Logan, 604 F. App'x at 840-41 (finding no entitlement to compensatory or punitive damages for First Amendment claim because no allegation of physical injury).  Accordingly, given the inadequacy of the current briefing, the Motion to Dismiss the Complaint because Rowe alleged no physical injury will be denied.

---

[8] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.

**B.    Claim One Is Too Conclusory**

A "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." Pell v. Procunier, 417 U.S. 817, 822 (1974).  As the Supreme Court explained:

> [C]ensorship of prisoner mail is justified if the following criteria are met.  First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.  Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements.  Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation.  Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

Procunier v. Martinez, 416 U.S. 396, 413-14 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).

In Claim One, Rowe argues that on May 8, 2018, Defendants Carpenter, Perkerson, and Birckhead violated his First Amendment rights when they intercepted and censored his outgoing postal mail containing his position paper.  (ECF No. 30, at 11.)  Rowe contends that "[o]n information and belief, on or about May 8, 2018, Defendants Carpenter and Perkerson, at the direction of Defendant Birckhead, intercepted one of Plaintiff's outgoing letters containing a position paper he authorized entitled, 'A Call to Action.'"  (ECF No. 25, at 5.)  Rowe argues that they

16

"deliberately, maliciously, and wantonly intercepted and censored his outgoing U.S. postal mail . . . ." (Id. at 11.)   Much like with the First Amendment claim in the 2018 Case,[9] this claim is too vague as alleged to state a claim for relief.

As a preliminary matter, "'inmates' outgoing mail may be opened and inspected by prison officials' because '[o]therwise, a prison official would never know that a letter contained the very type of material that . . . could rightfully be censored." Matherly v. Andrews, 859 F.3d 264, 281 (4th Cir. 2017) (quoting Altizer v. Deeds, 191 F.3d 540, 548 (4th Cir. 1999)) (alteration and omission in original).   Thus, to the extent Rowe alleges that Defendants violated his First Amendment rights by intercepting and opening his mail, that contention fails to state a claim for relief on its face.   However, it is settled that "[p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." Martinez, 416 U.S. at 413.

At most, Rowe contends that "[o]n information and belief, on or about May 8, 2018, Defendants Carpenter and Perkerson, at the direction of Defendant Birckhead, intercepted one of Plaintiff's outgoing letters containing a position paper" (ECF No. 30, at 5),

---

[9] In the 2018 Case, Rowe alleged that "Defendants violated Rowe's First Amendment rights under the U.S. Constitution by preventing him 'from correspond[ing] with non-prisoners in the form of essays.'" Rowe, 2020 WL 365103, at *2 (alteration in original)(citation omitted).

and it was "censored."  (Id. at 11.)  As has been explained to
Rowe twice before, his "use of [the] term ['censor' or
'censorship'] is a legal conclusion, which the Court need not take
as true under Rule 12(b)(6)."  Rowe, 2020 WL 365103, at *10.
Because this allegation is merely a legal conclusion, Claim One
fails to state a claim against Defendants Birckhead, Carpenter,
and Perkerson.  Accordingly, Claim One will be dismissed without
prejudice.

### C. First Amendment Retaliation Claims (Claims Two (a), Three, and Five Through Eight)

Claims of retaliation by inmates are generally treated with
skepticism because "[e]very act of discipline by prison officials
is by definition retaliatory in the sense that it responds to
prisoner misconduct."  Cochran v. Morris, 73 F.3d 1310, 1317 (4th
Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994))
(some internal quotation marks omitted).  "[P]laintiffs who claim
that their constitutional rights have been violated by official
retaliation must present more than naked allegations of reprisal
. . . ."  Adams, 40 F.3d at 74.  Instead, a plaintiff must allege
facts that plausibly show "either that the retaliatory act was
taken in response to the exercise of a constitutionally protected
right or that the act itself violated such a right."  Id. at 75.

To state a claim for retaliation in violation of the First
Amendment, a plaintiff "must allege that (1) [he or] she engaged
in protected First Amendment activity, (2) the defendants took

18

some action that adversely affected [the plaintiff's] First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendants' conduct." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted).

As to the first factor, the United States Court of Appeals for the Fourth Circuit has held that inmates engage in protected First Amendment activity when they write grievances and file lawsuits. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 544-46 (4th Cir. 2017). With respect to the second factor, the determination as to whether a defendant's actions "adversely affected [the plaintiff's] First Amendment rights," Constantine, 411 F.3d at 499 (citation omitted), is a fact-specific inquiry, which takes into account the actors involved and their relationships. See Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). The United States Court of Appeals for the Fourth Circuit has explained "adverse effect" as follows:

> First Amendment retaliation is actionable because "retaliatory actions may tend to chill individuals' exercise of constitutional rights." ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993). Not all retaliatory conduct tends to chill First Amendment activity, however, DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir.1995), and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a "de minimis inconvenience" to her exercise of First Amendment rights, ACLU of Md., 999 F.2d at 786 n.6. Of course, conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, and a plaintiff need not actually be deprived of

her First Amendment rights in order to establish First
Amendment retaliation. <u>Id.</u>

<u>Constantine</u>, 411 F.3d at 500. "[A] plaintiff suffers adverse
action" for the purposes of a First Amendment retaliation claim
"if the defendant's allegedly retaliatory conduct would likely
deter 'a person of ordinary firmness' from the exercise of First
Amendment rights." <u>See</u> <u>id.</u> (citations omitted).

As to the third factor – causation – a plaintiff must allege
facts sufficient to show a causal connection between the First
Amendment activity and the alleged adverse action. <u>See</u> <u>id.</u> at
501. "In order to establish this causal connection, a plaintiff
in a retaliation case must show, at the very least, that the
defendant was aware of [his or] her engaging in protected
activity." <u>Id.</u> (citation omitted). However, "[k]nowledge alone
. . . 'does not establish a causal connection' between the
protected activity and the adverse action." <u>Id.</u> (quoting <u>Price v.
Thompson</u>, 380 F.3d 209, 213 (4th Cir. 2004)). There must also be
circumstantial evidence, such as evidence that the retaliation
took place within some "temporal proximity" of the protected
activity, or direct evidence of a retaliatory motive. <u>Id.</u>; <u>see</u>
<u>Hill v. Lappin</u>, 630 F.3d 468, 475–76 (6th Cir. 2010).

As a preliminary matter, Defendants concede for the purposes of the Motion to Dismiss, "that Rowe's writings were protected conduct under the First Amendment," and therefore, he satisfies factor one.   (ECF No. 42, at 9); see Trulock v. Freeh, 275 F.3d 391, 404-05 (4th Cir. 2001).   The Court now turns to the second and third factors for Rowe's retaliation claims.   As discussed below, Rowe's Complaint "charge[s] that every single action by prison officials represented either a conspiracy or a retaliation" and "[t]his extended litany of conspiratorial activity casts serious doubts on [Rowe's] claims." Cochran, 73 F.3d at 1317-18.[10]

### 1.   Claim Two (a)

In Claim Two (a), Rowe contends that Defendants Carpenter and Perkerson, under the direction of Defendant Birckhead, retaliated against Rowe in violation of the First Amendment, when they housed him in the RHU for fourteen days after intercepting his position paper.   (ECF No. 30, at 11.)

Rowe's letter was intercepted on May 8, 2018.   (ECF No. 25, at 5.)   Rowe was placed in the RHU on May 10, 2018.   (Id. at 5-6.)   On May 15, 2018, Defendant Carpenter and Perkerson questioned Rowe "concerning the issues raised in his position paper, the rally it recommended and the writings on his blog," and Defendant Carpenter "informed [Rowe] he would remain in the RHU until the

_____

[10] The Court will address Rowe's allegations of an overarching conspiracy in Part V.F.

completition [of] her investigation." (Id. at 6.) Such allegations are sufficient to satisfy the second and third factors of a retaliation claim. Accordingly, the Motion to Dismiss will be denied with respect to Claim Two (a).

### 2. Claim Three

In Claim Three, Rowe contends that Defendant Coleman violated Rowe's First Amendment rights when he retaliated against Rowe by confiscating or destroying Rowe's reading materials. (ECF No. 30, at 11-12.) In sum, Rowe provides:

> On May 24, 2018, [Rowe] was released from the RHU back to General Population and was assigned his personal property that had been inventoried and stored by Defendant Coleman. Upon examining his personal property, Plaintiff noticed that several of his political books and magazines were missing and had either been stolen or confiscated by Defendant Coleman, including The Insurrectionist, Cointelpro: The FBI's Secret War on Political Freedom, Queer (In)Justice, Fundamental Political Line of the Maoist Internationalist Ministry of Prisons, [and] Maiost International Ministry (MIM) Theory [2-10].

(Id. at 7 (paragraph structure omitted).)

Rowe fails to allege facts that would suggest that Defendant Coleman's confiscation of his reading materials would have chilled a reasonable person's exercise of his First Amendment rights, or that there was a causal connection between his exercise of his First Amendment rights with respect to the May 8, 2018 position paper and the missing reading materials. Rather, Rowe merely speculates that his materials were taken in retaliation for his exercise of his First Amendment rights without any factual support

22

to back up that contention. Accordingly, the First Amendment retaliation aspect of Claim Three fails at the start.[11] See Adams, 40 F.3d at 74 ("[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ."). Instead, this claim appears to be more of a grievance that he was deprived of his property. Although off subject, for the sake of efficiency, the Court discusses this aspect of Claim Three below.

The Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). The Court generously construes Rowe to argue that when Defendant Coleman inventoried and maintained his papers and books and failed to return all of the materials to him, he was deprived of due process of law.

---

[11] In his Response, Rowe states: "Because this code of culture and silence and secrecy existed among the Defendant who retaliated against Rowe for blowing the whistle on conditions at the prison, it is impossible for Rowe to provide a clear link between Defendant Coleman and Rowe's writings . . . ." (ECF No. 45, at 8.) Rowe had an attorney in the 2018 Case and that case clearly had discovery and depositions of the Defendants involved in this case pertaining to the same conduct. All of the alleged retaliatory conduct had already taken place while that lawsuit was pending in this Court. Rowe had ample opportunities to obtain sufficient facts to plead this claim.

First, the Due Process Clause is not implicated by a negligent act of state official causing unintended loss of property. <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986). Negligent and intentional deprivations of property "do not violate [the Due Process] Clause provided . . . that adequate state post-deprivation remedies are available." <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984) (finding due process satisfied by post-deprivation remedy to redress intentional destruction of personal property by prison guard during a shakedown). Moreover, Virginia's provision of adequate post-deprivation remedies forecloses Rowe's due process claim for the deprivation of property. <u>See</u> <u>id.</u>; <u>Wilson v. Molby</u>, No. 1:12cv42 (JCC/JFA), 2012 WL 1895793, at *6-7 (E.D. Va. May 23, 2012); <u>Henderson v. Virginia</u>, No. 7:07-cv-00266, 2008 WL 204480, at *10 n.7 (W.D. Va. Jan. 23, 2008).

Virginia has provided adequate post-deprivation remedies for deprivations caused by state employees. Under the Virginia Tort Claims Act, Virginia has waived sovereign immunity for damages for "negligent or wrongful" acts of state employees acting within the scope of employment. Va. Code Ann. § 8.01-195.3 (West 2021).[12] The United States Court of Appeals for the Fourth Circuit has held that the Virginia Tort Claims Act and Virginia tort law provide

---

[12] "[T]he Commonwealth shall be liable for claims for money. . . on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment . . . ." Va. Code Ann. § 8.01-195.3 (West 2021).

adequate post-deprivation remedies for torts committed by state employees.  See Wadhams v. Procunier, 772 F.2d 75, 77-78 (4th Cir. 1985).  Because the availability of a tort action in state court fully satisfies the requirement of a meaningful post-deprivation process, Rowe cannot state a claim for the loss of his property under the Fourteenth Amendment.  See Wilson, 2012 WL 1895793, at *6-7; Henderson, 2008 WL 204480, at *10 n.7.  Accordingly, the remaining portion of Claim Three will be dismissed as frivolous and for failure to state a claim.

### 3.    Claims Five and Eight

In Claim Five, Rowe contends that Defendants Bradley, Shaw and Taylor, under the direction of Defendant Clark, violated Rowe's First Amendment rights when they retaliated against him by terminating him from his job assignment.  (ECF No. 25, at 12.) Similarly, in Claim Eight, Rowe argues that Defendant Clark retaliated against Rowe in violation of the First Amendment when he directed Defendants Bradley, Taylor, and Shaw to terminate Rowe from his work assignment.  (Id. at 13.)  It is unclear from Rowe's terse allegations whether this was a work assignment that he had merely been recommended for or whether this was a job that he already had, and that ambiguity makes this claim difficult to assess.

In support of these claims, Rowe argues that, on May 8, 2018, Defendant Bradley recommended Rowe for the job as a Department of

Education aide.   (Id. at 7.)   Rowe was placed in the RHU on May
10, 2018, and, was released on May 24, 2018.   (Id. at 5-6.)   Thus,
it appears that Rowe did not actually perform this job, but had
merely been approved for a new work assignment.   On May 28, 2018,
Rowe reported to the work assignment, but Defendant Bradley
"informed him that he was terminated from his work assignment" and
that "the decision came down from up top."   (Id. at 7 (citation
omitted).)   Rowe alleges that, "[o]n May 30, 2018, Defendants Shaw
and Taylor approved Defendant Bradley's termination request
without conducting a . . . [h]earing."   (Id. at 7.)   In response
to several inmate requests submitted by Rowe, Defendant Shaw
informed Rowe that the she was instructed by the Administration
that Rowe was "not to work" in the education area of the prison.
(Id. at 8.)   Defendant Shaw noted that the request would be
forwarded to Defendant Clark for his response.   (Id. at 8.)   Rowe
also requested to see the "a copy of the Incident Report that would
reflect the specific reason(s) why he was terminated from his job,"
but Defendant Clark denied that request noting that, "[n]o incident
reports will be forwarded to offenders," and that, as Chief of
Security, he selects which inmates can work in certain areas and
that he "did not choose [Rowe] at that time."   (Id. at 8-9.)

As a preliminary matter, Rowe has failed to allege facts
indicating that Defendant Bradley, Taylor, or Shaw had any role in
the decision to terminate Rowe from his work assignment.   In order

to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998).  To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (citations omitted). Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted).

Rowe's own allegations provide that Defendant Clark acted alone in discontinuing Rowe's work assignment in the education department.  (ECF No. 5, at 9.)  To the extent that Rowe faults Defendants Bradley, Taylor, or Shaw for conveying the information that he had been terminated or for denying his grievance complaining about the termination, that is insufficient to state a claim for relief.  DePaola v. Ray, No. 7:12cv00139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (observing that the "after-the-fact denial of a grievance falls far short of establishing § 1983 liability." (citing Brooks v. Beard, 167 F. App'x 923, 925

(3rd Cir. 2006))). Rowe fails to allege facts that Defendants Bradley, Taylor, or Shaw were personally involved in terminating him from the work assignment, and therefore, could not have retaliated against Rowe for exercising his First Amendment rights. Thus, Claim Five will be dismissed for as legally insufficient and as frivolous.

What remains is Rowe's contention that Defendant Clark terminated him from his position as a Department of Education aide in retaliation for Rowe's exercise of his First Amendment rights with respect to the May 8, 2018 position paper. As pled, this claim of retaliation is weak, at best. Nevertheless, because of the timing of the termination, at this juncture, Rowe has sufficiently pled a claim to survive Fed. R. Civ. P. 12(b)(6). Accordingly, Claim Eight remain with respect to Defendant Clark.[13]

### 4. Claim Six

In Claim Six, Rowe contends that in June 2018, Defendants Carpenter and Perkerson, under the direction of Defendant Birckhead, retaliated against Rowe in violation of the First Amendment when they intercepted his JPay email containing his two political essays. (ECF No. 25, at 12-13.) Rowe contends that, on June 1, 2018, he attempted to send out two political essays by

---

[13] If Rowe also intended to name Defendants Bradley, Taylor, and Shaw in Claim Eight, any claim against those Defendants will be dismissed for the same reason as Claim Five.

JPay email, however, the essays were intercepted and censored due to the mail cover. (Id. at 10.) On June 6, 20, and 21, 2018, Rowe received ten notifications advising him that "the JPay e-mails containing the above two essays had been censored due to a 'violation of COPD, Law, or DOC Policy.'" (Id.) The Court fails to discern, and Rowe fails to explain with specificity, what protected activity he engaged in that caused Defendants to allegedly retaliate against him with respect to the June 1, 2018 JPay email. Nevertheless, the Court assumes that Rowe intends to allege that Defendants blocked his JPay email on June 1, 2018, in retaliation for exercising his First Amendment rights with respect to the May 8, 2018 intercepted letter and position paper, and his blog. On the facts alleged in the Complaint, Rowe has sufficiently pled a claim to survive Fed. R. Civ. P. 12(b)(6).

### 5. Claim Seven

In Claim Seven, Rowe contends that Defendant Ray retaliated against Rowe in violation of the First Amendment when he granted Defendant Carpenter's request for a mail cover in March of 2018. (ECF No. 25, at 13.) Rowe admits that Defendant Ray issued the mail cover "without inquiring why the mail cover was needed and without having been provided with any evidence that [Rowe] had used his correspondence to engage in illegal or criminal activities." (Id. at 4-5.) This mail cover was approved prior to any conduct that Rowe claims was retaliatory and he concedes that

29

Defendant Ray issued it without any knowledge of why it was needed, thus, Rowe fails to allege facts indicating that Defendant Ray issued the mail cover with a retaliatory motive.[14]  In Rowe's Response, he states, "[f]or purposes of this Opposition brief only, Rowe concedes that Defendant Ray is not liable as described in this count and that it should be dismissed." (ECF No. 45, at 13.) Accordingly, Claim Seven is legally insufficient and will be dismissed.

### D.  Due Process Claim (Claim Four (b))

In Claim Four (b), Rowe contends that Defendant Perkins violated his Fourteenth Amendment rights when he conducted the formal due process hearing without Rowe present.  The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, § 1.  As discussed previously, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest.  Beverati, 120 F.3d at 502 (citations omitted).  Presumably, Rowe argues that he was entitled to attend his due process hearing and when the hearing was conducted without

_____

[14] In the 2018 Case, the Court already found that the approval of the mail cover did not violate Rowe's constitutional rights. See Rowe, 2020 WL 365103, at *7.

him present, Defendant Perkins denied him the due process of law. However, Rowe does not allege that the conduct violated either a protected property or liberty interest, and thus, he has failed to state a viable due process claim.

Even so, "the inability to attend one's disciplinary hearing, does not, standing alone, constitute a due process violation." Proctor v. Hamilton, No. 1:19CV275 (TSE/MSN), 2021 WL 67353, at *2 (E.D. Va. Jan. 7, 2021) (citation omitted).[15]  Accordingly, Rowe fails to allege facts indicating that Defendant Perkins violated his due process rights.  Claim Four (b) will be dismissed as legally insufficient and as frivolous.[16]

---

[15] Under Wolff v. McDonnell, 418 U.S. 539, 560-61 (1974), the Supreme Court has held that, when an inmate is facing a disciplinary hearing that may result in the loss of a liberty interest, such as good conduct credits, an inmate is entitled to the following protections:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

Coor v. Stansberry, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing Wolff, 418 U.S. at 563-71).  However, "the procedures outlined in Wolff are not themselves liberty interests; they are merely protections afforded to inmates whose cognizable liberty interests are denied."  Proctor, 2021 WL 67353 (emphasis added).  Thus, despite what Rowe appears to suggest, Wolff provides Rowe no liberty interest in attending a hearing.

[16] In the agreed upon Statement of Claims, Defendants did not include a First Amendment retaliation claim as a component of Claim Four.  Although Rowe agreed to this omission, nevertheless, the Court believes Rowe intended to raise such a claim, albeit a

E.    **Eighth Amendment Claim (Claims Two (b) and Four (a))**

To allege an Eighth Amendment claim, an inmate must allege facts showing: (1) objectively that the deprivation suffered or harm inflicted "was 'sufficiently serious,' to the inmate; and (2) subjectively that the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Under the objective facet of the test, the inmate must allege facts showing that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (citation omitted).  To successfully plead such extreme deprivation, Rowe

---

vaguely pled claim.  (See ECF No. 25, at 12.)  Therefore, in the abundance of caution, the Court addresses that claim.

The Court construes Rowe to argue that Defendant Perkins retaliated against Rowe for exercising his First Amendment rights when he conducted the formal due process hearing without Rowe present.  (Id.)  Rowe fails to allege facts that plausibly suggest any causal connection between his exercise of his First Amendment rights and Defendant Perkins holding the formal due process hearing without Rowe in attendance.  Accordingly, Rowe fails to state a claim for relief against Defendant Perkins on this ground, and any such allegation in Claim Four will be dismissed.

"must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'"   Id. at 634 (quoting Strickler, 989 F.2d at 1381).

The subjective facet of the test requires the plaintiff to allege facts showing that a particular defendant acted with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Quinones, 145 F.3d at 168 (citing Farmer, 511 U.S. at 837); see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, the deliberate indifference standard requires a plaintiff to assert facts sufficient to permit an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that

his actions were 'inappropriate in light of that risk.'" <u>Parrish</u>
<u>ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004)
(quoting <u>Rich</u>, 129 F.3d at 340 n.2).

### 1. Claim Two (b)

In Claim Two (b), Rowe contends that Defendants Carpenter and
Perkerson, under the direction of Defendant Birckhead, subjected
him to cruel and unusual punishment under the Eighth Amendment
when they housed him in the RHU for fourteen days. (ECF No. 25,
at 11.) In support of this claim, at most, Rowe alleges that he
was subjected to "14 days in an isolation cell in the RHU, for 22-
24 hours a day where he suffered physical and psychological
torture." (<u>Id.</u> at 11.) However, Rowe's vague complaints about
the conditions of his confinement amount to no more than "'routine
discomfort [that] is part of the penalty that criminal offenders
pay for their offenses against society.'" <u>Strickler</u>, 989 F.2d at
1380 n.3 (quoting <u>Hudson</u>, 503 U.S. at 9). As to the objective
facet, Rowe fails to allege that he sustained any injury, much
less a "a serious or significant physical or emotional injury
resulting from the challenged conditions.'" <u>Id.</u> at 1381. For
this reason alone, his claim may be dismissed. However, Rowe also
fails to allege facts that suggest that Defendants knew of and
disregarded a substantial risk of serious harm to Rowe from simply

34

housing him in the RHU for fourteen days.[17]  Rowe fails to satisfy either facet of the Eighth Amendment.  Accordingly, Claim Two (b) will be dismissed for failure to state a claim and as frivolous.[18]

###   2.   Claim Four (a)

In Claim Four (a), Rowe contends that Defendant Perkins violated his Eighth Amendment rights when he conducted the formal due process hearing without Rowe present.  This claim is entirely frivolous.  Again, Rowe fails to allege facts that would suggest that he sustained any injury, much less, "a serious or significant physical or emotional injury resulting from" the alleged conduct. Id. at 1381.  Rowe also fails to plausibly suggest that Defendant Perkins knew of and disregarded a substantial risk of serious harm to Rowe by holding the hearing without Rowe present.  Claim Four (a) will be summarily dismissed for failure to state a claim and as frivolous.

---

[17] The Court recognizes that long-term isolation in solitary confinement under certain conditions may amount to cruel and unusual punishment.  See, e.g., Porter v. Clarke, 923 F.3d 348, 364 (4th Cir. 2019).  Those circumstances are not alleged here.

[18] Although not alleged in the Statement of Claims agreed upon by the parties, to the extent Rowe somehow suggests that housing him in the RHU violates due process, that claim would fail.  Prison conditions that do not impose an atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life are not protected interests under the Due Process Clause.  See Sandin v. Conner, 515 U.S. 472, 484 (1985) (holding that disciplinary segregation does not present the type of atypical, significant deprivation in which the state might create a liberty interest).

**F.   Allegations Of An Overarching Conspiracy**

The Court notes that the Statement of the Claims agreed upon by the parties, does not include a conspiracy claim. Nevertheless, in his Complaint, and in his Response, Rowe contends that each action taken against him is evidence of a "'larger conspiracy' among Defendants 'to retaliate against him for his protected speech." (See ECF No. 25, at 11-12; ECF No. 45, at 8.) Rowe apparently believes that his mere allegation that a conspiracy existed somehow alleviates him of the necessity to plead a plausible claim for relief against the named Defendants. That is not so. Moreover, as discussed below, Rowe has failed to plausibly allege that a conspiracy exists.

To establish a civil conspiracy under § 1983, Rowe must allege facts indicating that the Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996) (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). To this end, Rowe must allege facts that plausibly suggest "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) (quoting Caldeira v. Cty. of Kauai, 866 F.2d 1175, 1181 (9th Cir. 1989)). "Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to

36

demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint." <u>Brown v. Angelone</u>, 938 F. Supp. 340, 346 (W.D. Va. 1996) (citations omitted).

Other than insisting that every action taken against him was part of a conspiracy to retaliate against him for exercising his First Amendment rights, Rowe fails to allege facts that suggest that Defendants all agreed to retaliate against Rowe. Nowhere in his Complaint does Rowe provide any facts that plausibly suggest that these Defendants "formed any type of agreement or acted in concert to injure him." <u>Id.</u> In support of this claim of conspiracy, Rowe contends that a conspiracy existed because all the adverse actions occurred "within a span of just 28 days" (Compl. 14), and that the "individual adverse actions taken against him by Defendants were a coordinated effort to punish him for the criticisms of the conditions and officials at [Sussex]." (<u>Id.</u> at 15.) Rowe later states that "his allegation of conspiracy should be sufficient enough to establish a link" between the actions of Defendants and the alleged retaliation. (ECF No. 45, at 9.) Rowe cannot just explain away all actions taken against him as part of a conspiracy without supplying and facts to support the existence of a conspiracy. <u>See</u> <u>Cochran</u>, 73 F.3d at 1318 (explaining that a complaint "charg[ing] that every single action by prison officials represented either a conspiracy or retaliation," must be treated

37

with skepticism, and "[t]his extended litany of conspiratorial activity casts serious doubts" on such claims (citing Adams, 40 F.3d at 74-75)).  In other words, to state a claim for relief, Rowe cannot simply guess that a conspiracy existed to deprive him of his rights.  Nor can Rowe offer a blanket assertion that a conspiracy must exist because it is the only explanation for Defendants' actions. By Rowe's definition, any coordinated action taken by prison officials would amount to a conspiracy, and that is simply not the case.  Rather, "[t]he mere fact that each of these actors played a part in the events is not sufficient to show such a unity of purpose." Brown, 938 F. Supp. at 346.  In sum, Rowe fails to allege facts that plausibly suggest the existence of a conspiracy amongst the Defendants to violate his rights.  Id. Therefore, Rowe's claims alleging that an overarching conspiracy existed will be dismissed as legally insufficient and frivolous.[19]

---

[19] Rowe also suggests that this alleged conspiracy essentially makes it impossible to create a causal connection between Defendants actions and the alleged retaliatory conduct and that he should be permitted to "flesh out the details of the conspiracy and what role each Defendant played in the conspiracy." (See, e.g., ECF No. 45, at 8 (suggesting that the conspiracy makes it "impossible for Rowe to provide a clear link" between the actions taken against Rowe)).  Between the filing of the 2018 Case and now, Rowe had discovery, and an attorney, which is significantly more than most pro se litigants.  It was incumbent upon Rowe to state a plausible claim for relief of a conspiracy to make it through the Court's screening obligations under 28 U.S.C. § 1915 (e)(2), and at this juncture, he has failed to do so.

## VI. CONCLUSION

The Motion to Dismiss (ECF No. 41) will be granted in part and denied in part. Claims One will be dismissed without prejudice. Claims Two (b), Three, Four, Seven, Eight, and any claim of a conspiracy will be dismissed with prejudice as legally insufficient and frivolous. Claims Two (a), Claim Five against Defendant Clark only, and Claim Six remain. Defendants Coleman, Perkins, Bradley, Shaw, Taylor, and Ray will be dismissed as parties to the action. Any party wishing to file a motion for summary judgment will be directed to do so within forty-five (45) days from the date of entry hereof.

The Clerk is directed to send a copy of the Memorandum Order to Rowe and counsel of record.

It is so ORDERED.

/s/ REV

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 12, 2021

39